## *THE CONSOLIDATED GAS COMPANY OF BALTIMORE CITY *vs.* JOHN J. CROCKER.

*Liability of Gas Company for Explosion of Gas—Contributory Negligence—Notice of Leaking Gas.*

It is negligence on the part of a gas company to allow gas to escape from its pipes into a house after receiving notice that a leak existed ; and notice of the leak given to the company's employees is notice to the company.

Where large quantities of gas have escaped into a building and have formed by diffusion with the air an explosive compound, and this condition is known to a person entering the building, it is negligence in law to enter with a lighted candle or to strike a match after entering.

When plaintiff moved into a certain house, the odor of escaping gas was perceptible in the cellar, and the attention of an employee of the gas company (the defendant) was called to the matter. He said that another employee would put in a new meter. When this was done the second employee said that the new meter would remedy the leak. There was evidence tending to show that the gas escaped from a main under the sidewalk. A gasoline stove was in the cellar and on the evening of the explosion plaintiff's servant went to the cellar (which had not been opened that day) with a lighted lamp for the purpose of .using the stove. After striking several matches, she threw a basin of water containing a few spoonsful of gasoline on a pile of coal, and after again lighting the stove, which immediately went out, the servant saw a sheet of bluish flame in the direction of the steps leading up from the cellar to the dining-room where two gas jets were burning. An explosion instantly followed which damaged the building and threw the servant towards the front cellar

---

*Authorities as to liability for negligence in the escape and explosion of gas are found in a note to *Ohio Gas Fuel Co.* v. *Andrews,* 29 Law Rep. Anno. 337.

door. This explosion occurred about ten minutes after the servant entered the cellar. The lamp suspended there by her was not injured. Afterwards a blaze was found which appeared to come from oil on the pile of coal. *Held*,

1st. That under these circumstances the Court could not assume that the act of the plaintiff's servant in taking a lighted lamp into the cellar was contributory negligence as a matter of law.

2nd. That the escape of gas after the defendant had received notice of the leak and after it had failed to use reasonable care to remedy the defect was sufficient evidence of defendant's negligence to go to the jury.

3rd. That if the jury found that the going into the cellar with a lighted lamp and striking matches there by plaintiff's servant were such acts as a person of ordinary care would not have done under the circumstances, then plaintiff was not entitled to recover.

4th. That it was for the jury to determine whether the explosion was caused by gas or by gasoline.

Appeal from the Superior Court of Baltimore City. Action to recover damages for an injury to a building caused by an explosion of gas. The evidence is summarized in the opinion of the Court. At the trial, the defendant offered the following prayers:

*Defendant's First Prayer.*—That the plaintiff is not entitled to recover unless he shows to their satisfaction that the explosion was caused by illuminating gas which flowed into the premises of the plaintiff from some of the pipes or apparatus belonging to the defendant, and that the flow was caused by negligence on the part of the defendant or its servants ; and that the plaintiff is not entitled to recover if the accident was caused by the negligence of the plaintiff or his agent or employee, directly contributing thereto at the time of the occurrence of the explosion, and that the evidence in the cause shows that there was such contributory negligence, and that therefore the plaintiff is not entitled to recover. (Rejected.)

*Defendant's 2nd Prayer.*—The defendant prays the Court to instruct the jury that the plaintiff has not offered any legally sufficient evidence of negligence on the part of the

defendant or its servants, and hence the verdict should be for the defendant.   (Rejected.)

*Defendant's 3rd Prayer.*—In order to entitle the plaintiff to a verdict, the jury must be satisfied from the evidence that the explosion testified to by the witnesses was caused by an escape of illuminating gas into the premises of the plaintiff from the mains or apparatus of the defendant, through the negligence of the defendant or its agents, and the burthen of proof is on the plaintiff to satisfy the jury of the existence of the aforesaid facts upon which this instruction is predicated.   (Rejected.)

*Defendant's 4th Prayer.*—If the jury should find a verdict for the plaintiff, it should be confined to the actual pecuniary loss which the plaintiff has suffered in the injury of his property, and should not include any loss of profits or gains.   (Granted.)

*Defendant's 5th Prayer.*—The defendant prays the Court to instruct the jury that the plaintiff is not entitled to recover unless he shows to their satisfaction that the explosion was caused by illuminating gas which flowed into the premises of the plaintiff from some of the pipes or apparatus belonging to the defendant, and that the flow was caused by negligence on the part of the defendant or its servants ; and that the plaintiff is not entitled to recover if the accident was caused by the negligence of the plaintiff or his agent or employee, directly contributing thereto at the time of the occurrence of the explosion.   (Rejected.)

The Court below (RITCHIE, J.), rejected all of defendant's prayers except the fourth, which it granted, and rejected the eight prayers offered by the plaintiff and gave to the jury the following instructions :

*Court's Instruction No. 1.*—"That it is the duty of the defendant to exercise such care in the inspection and control of its pipes and in the operation of its business as would be used by persons of ordinary care engaged in similar business, or in the business of manufacturing and handling of similarly dangerous substance.   And if the jury find that

by reason of its failure to use such care, the gas of defendant leaked or escaped through the meter mentioned, or from its pipes outside said building, into the basement of the house occupied by the plaintiff; and that the explosion testified to was an explosion of gas that had so found its way into said basement, and that plaintiff's property was injured thereby, then the plaintiff is entitled to recover ; unless the jury find, that going into said basement with a lighted lamp and striking matches there by the witness, Staenglen, were such acts as a person of ordinary care and prudence would not have done under the circumstances.

*Instruction No. 2.*—The burden of proof is on the plaintiff to satisfy the jury of such want of care, and that said explosion was an explosion of gas. And if they find such want of care, and that it was an explosion of gas, then the burden of proof is on the defendant to satisfy the jury that the acts of Mrs. Staenglen were such as would not have been done by a person of ordinary care under the circumstances.

*Instruction No. 3.*—But if the jury find that the said explosion was an explosion of gasoline, or of the vapor arising therefrom, then the plaintiff is not entitled to recover.

The jury returned a verdict for the plaintiff for $437.22, and from the judgment thereon, after a motion for a new trial had been overruled, the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*William A. Fisher* and *J. Alexander Preston* (with whom was *Alexander Preston* on the brief), for the appellant.

The evidence presents a clear case of contributory negligence. The theory of the appellee is that the accident was caused by illuminating gas. He has proved that they had full knowledge of the fact that gas was escaping from the time they occupied the house, several weeks prior to December 3rd, 1891, the date of the explosion. The cellar

had been kept tightly closed, and yet Mrs. Staenglen, the employee of the appellee, carried down a lamp and struck matches there. The personal knowledge of the appellee would be unimportant, but the facts show that he had it and that he invited Mrs. Bryant to go down there also, knowing that Mrs. Staenglen was there with a light. *Lanigan* v. *N. Y. Gas Co.*, 71 N. Y. 29; *Bartlett* v. *Boston Gaslight Co.*, 117 Mass. 533; *Oil City Gas Co.* v. *Robinson*, 13 Reporter, 253; *Hampton* v. *Cradley Heath Co.*, 8 Am. & Eng. Ency. 1274, note; *Vallee es qualite* v. *New City Gas Co.*, 7 Am. Law Rev. 767; *Holden* v. *Liverpool Gas Co.*, 3 Common Bench, 14; *Anthon's N. P. cases*, page 351.

There was not evidence legally sufficient to be submitted to the jury on the theory that the accident was caused by illuminating gas. The evidence produced by the plaintiff is that the gas entered the cellar from the front, and that it exploded in the rear, having then become an explosive mixture just at the time when the match was struck. Mrs. Staenglen had a few moments before carried a lighted lamp through the whole length of the cellar and had hung it up, still burning, in the front part of the cellar near the point at which it is claimed that the gas entered, and near the ceiling. It is impossible without a violation of natural laws, that the explosion could have occurred under these circumstances, from illuminating gas, in the rear part of the cellar, and the Court should not have allowed a jury to disregard them, and enter upon a field of wild and ungoverned conjecture.

The ground of action alleged was the negligence of the defendant in allowing gas to escape from its pipes into the cellar. There was no evidence of such negligence. The new meter was put into position on the 21st day of November, 1891, and the man who put it in supposed that everything was in good order, and said so to Mrs. Staenglen. According to the evidence of the appellee, the gas continued to escape into the cellar until the time of the explosion, December 3rd, but he gave no notice to the defendant until

*after* the explosion. *Hally* v. *Boston Gas Co.*, 8 Gray, 121-2, 134 ; *Bartlett* v. *Boston Gas Co.*, 122 Mass. 213.

*E. Beverly Slater* (with whom was *John F. Preston* on the brief, but the Court declined to hear *Mr. Preston*), for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The only questions we have before us on this appeal are those which arise in consequence of the rejection by the trial Court of the prayers presented by the defendant for instructions to the jury, and those which grow out of the granting by the Court of three instructions of its own. The case is one founded in alleged negligence. The fundamental principles which must govern its decision are thoroughly settled and established. To apply those principles correctly is all that is required.

The defendant below, the appellant here, is a gas company. It manufactures and supplies gas for illuminating purposes. The gas is transmitted through mains and pipes underneath the surface of streets into houses and elsewhere. The plaintiff below, the appellee here, leased and occupied certain premises in Baltimore City. In those premises he conducted a saloon. He moved into them on or about the twentieth of November, 1891. At that time the odor of escaping gas was very perceptible in the cellar of the house. When an employee of the gas company was notified that the gas was escaping and accumulating in the cellar, he stated that another employee of the company would be sent to remove the old meter and to replace it with a new one, as was customary whenever there was a change in the occupants of premises ; and when the attention of the employee who did remove the old meter was called to this odor he stated that he guessed the new meter would remedy the matter. In fact, however, this did not furnish a remedy, and gas continued to flow into the cellar to such an extent that it was necessary to keep the door closed at the head

of the stairway leading from the cellar into the dining-room. There was evidence tending to show that the gas escaped from a main which ran under and parallel to the sidewalk, and that thus escaping it penetrated the front wall of the premises occupied by the plaintiff. In the cellar there was a gasoline stove used for cooking oysters. On the evening of December the third, 1891, Mrs. Staenglen, an employee of the appellee, went into the cellar for the purpose of frying some oysters. She closed the door behind her at the head of the cellar stairway. She took with her a lighted coal oil lamp and placed it on a bracket near the top of the cellar, and then proceeded to ignite the gasoline in the stove. The cellar had been opened but once in the preceding twenty-four hours, and then only for a brief period. She struck several matches, but there being apparently some water in the cup of the stove the gasoline did not vaporize and burn. Mrs. Bryant, an acquaintance of Mrs. Staenglen, then entered the cellar, but left the door leading to the dining-room open. In the dining-room and just opposite the door leading into the cellar two gas jets were burning. According to the testimony of Mrs. Staenglen she threw a basin of water containing a few spoonfuls of gasoline on the coal pile, and in about two minutes after again lighting the gasoline stove, which immediately went out, she happened to look in the direction of the steps leading up to the dining-room and there she saw a sheet of bluish flame which was instantly followed by an explosion. This explosion occurred in about ten minutes after Mrs. Staenglen had entered the cellar with the lighted coal oil lamp. This lamp continued to burn during the whole time Mrs. Staenglen was in the cellar. The force of the explosion was so great that it threw Mrs. Bryant out of the front cellar door and did considerable damage to the building. The coal oil lamp suspended in the cellar was uninjured, but the globes on the gas jets in the dining-room were shattered. According to the testimony of Mrs. Bryant, who was called as a witness for the defendant, Mrs. Staenglen emptied the gasoline out of the

stove into a basin and then replenished the stove and threw
the basin full of gasoline on the coal pile. She further
stated that after this Mrs. Staenglen lit several matches to
start the fire in the stove and that shortly after the explo-
sion occurred. It was further shown that after the explo-
sion had taken place several persons entered the cellar and
found a blaze proceeding apparently from burning oil in the
coal pile.

By rejecting the defendant's first prayer the Court refused
to rule that in law the act of entering the cellar with the
lighted coal oil lamp, under the circumstances stated, was
such a glaring act of contributory negligence contributing
to the injury complained of as to preclude a recovery by
the plaintiff. Had it been a *concessum* in the case, or had
it even been clear from the evidence that the lighted coal
oil lamp carried into the cellar caused the explosion, there
would have been some foundation for imputing contribu-
tory negligence to the plaintiff's employee in carrying it
there. Not only does it not appear that the carrying of
the lamp into the cellar actually caused the explosion, but
the defendant, on the contrary, strenuously insists that
there was no explosion of gas at all, but that the explosion
proceeded from gasoline. When large quantities of gas
have escaped into a building and have commingled with the
air therein and thus formed a highly explosive compound,
and this condition is known to a person entering such build-
ing, it is obviously in law a grossly negligent act to enter
with a lighted candle or lamp, or to strike a match after
entering; because according to known and unvarying laws
an explosion or a suddenly liberated mechanical energy re-
sulting from the instantaneous combustion of the inflammable
compound when brought in contact with a flame, will in-
evitably follow. And when under these conditions an ex-
plosion does instantly result the moment a flame is brought
in contact with such a compound of gas and atmosphere,
the fact that the flame caused the combustion and the con-
sequent and simultaneous explosion is beyond reasonable

dispute or question.   The deliberate or the careless appli-
cation of a flame to such an explosive compound is clearly
an act of negligence so unequivocally contributing to the
production of the injury that no recovery can be had by the
person guilty of or chargeable with that act of concurrent
negligence.    And this is precisely what was decided in
*Lanigan* v. *N. Y. Gas Co.*, 71 N. Y. 29 ; *Oil City Gas Co.*
v. *Robinson*, 99 Pa. St. 1.    In these cases the explosion in-
stantly followed upon a light being brought in contact with
the gas and there could be no possible dispute that the
bringing of the light in contact with the gas caused the
explosion.    But where there is not such a connection be-
tween the act of entering the house with a lighted lamp and
the explosion of the gas as to establish with certainty and
to the exclusion of any other reasonable hypothesis the re-
lation of cause and effect, the question as to what did cause
the explosion is for the jury to solve under proper instruc-
tions from the Court.    When, therefore, as here, more than
ten minutes intervened between the time the lamp was taken
into the cellar and the time that the subsequent explosion
occurred ; and when, as here, the lamp itself was uninjured,
it would be impossible for the Court to assume that the
lighted lamp caused the explosion, and to rule as a conclu-
sion of law that the plaintiff's employee was guilty of con-
tributory negligence in taking the lamp into the cellar.
And this is true also with respect to the lighting of the
matches to ignite the gasoline in the stove.    Assuming, as
must be done in discussing this prayer, that all the evidence
adduced by the plaintiff was true, then at least two minutes
intervened between the period of time when the last match
was struck and the stove was lighted and extinguished for
the last time, and the period when the explosion took place,
and there was obviously, therefore, no evidence to show
that the explosion proceeded from these matches or from
the stove.    If, then, the evidence failed to show affirma-
tively and without dispute that the explosion resulted from
the lighted lamp or from the burning matches being brought

in contact with the gas, it would have been improper for the Court to say as a legal conclusion that the taking of the lighted lamp into the cellar or the striking of the matches there, was an act of contributory negligence directly contributing to the production of the injury complained of, because unless the explosion did result from the one or the other causing a combustion, then neither the one nor the other contributed to the explosion.   If there is no evidence to show that a particular act of imputed negligence did actually concur in producing an injury, then there is no evidence that the doing of that act was in itself contributory negligence, and it would be clearly erroneous to ascribe to it that character or quality.   To justify a Court in pronouncing a given act such an act of contributory negligence as to defeat a recovery it must be a distinct, prominent and decisive fact about which ordinary minds would not differ, because where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as matter of law.   *Cook* v. *Balto. Trac. Co.*, 80 Md. 558.   Under the conditions we have stated and in view of the failure of the evidence to show that the lamp or the matches, to the exclusion of every other reasonably probable cause, occasioned the ignition or combustion that produced the explosion, the Court was right in declining to rule as requested in the defendant's first prayer, that the plaintiff had been guilty of such pronounced negligence directly contributing to the injury as to preclude a recovery.

The defendant's second prayer was also properly rejected. It asked the Court to instruct the jury that the plaintiff had offered no legally sufficient evidence of negligence on the part of the defendant.   Assuming the truth of the evidence adduced by the plaintiff, it was clearly negligence on the part of the defendant to allow gas to escape from its pipes

after receiving notice that a leak existed, "Whilst no·absolute standard of duty in dealing with such dangerous agencies can be prescribed, it is safe to say in general terms, that every reasonable precaution suggested by experience, and the known perils of the subject ought to be taken. This would require in the case of a gas company not only that its pipes and fittings should be of such materials and workmanship, and laid in the ground with such skill and care as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of all leaks that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business." *Koelsch* v. *Philadelphia Co.*, 152 Pa. 355 ; S. C. 18, L. R. A. 759. A neglect or a failure to use such precautions would be clearly negligent. It cannot be doubted, if the evidence adduced by the plaintiff be credited, that the least attention or diligence on the part of the company's employees would have apprised them of the escape of gas into the street and through the walls of the plaintiff's house. The defendant's employee had been notified of the escape of gas. He had promised to remedy it when the new meter should be placed in position, but he failed to search for or to discover whence, in fact, the leaking gas proceeded. He seems to have assumed that the change in the meter would obviate the trouble, but he made no search, nor did the other employee who put the new meter in position endeavor to locate the leak. It was clearly negligence on the part of these employees not to make some effort to discover the location of the defect which caused the leak. They were aware of the leak, and that was notice to the company. It then became obligatory on the company to use reasonable efforts in a reasonable time to ascertain where the leak was and to stop it. *Morse* v. *Hastings Gas Co.*, 4 Fost. & Fin. 324. If instead of doing this the company's employees chose to assume that a change in the meter would remedy the defect,

though confessedly they did not know whether it would or not, they obviously did not discharge the duty incumbent upon them, and their negligence in this particular was the negligence of the company.    When a gas company is made aware, as in this case, that large quantities of gas are escaping into a building, it becomes its plain duty to use reasonable diligence to discover and to stop the leak.    It cannot discharge that duty by assuming without knowing that the leak proceeds from one source, when, in fact, it proceeds from a totally different source which could have been discovered by proper inspection.    This rule requires nothing unreasonable—it does not require that the company shall keep up a constant inspection all along its lines, without reference to the existence or non-existence of a probable cause for the occurrence of leaks or escapes of gas—but it does require that when notice of the existence of a leak has been given to a company, the company shall use reasonable care to discover the cause of the leak and appropriate means to remedy it.    This doctrine is not in conflict with the principle laid down in *Hutchinson* v. *Boston Gas Co.*, 122. Mass. 219, and other cases of a kindred character.    " There the escape of gas complained of was the result of an overwhelming calamity, that had laid a great part of the city of Boston in ashes and fractured and severed the company's pipes in so many places that all the force it could employ was insufficient to guard against all possible consequences of the escape of gas without at once shutting off the supply from the whole city, and this it was excused from doing on the ground that more mischief would result therefrom than was likely to result from the neglect so to do."    *Koelsch* v. *Philadelphia Co.*, *supra.*

The escape of gas from the defendant's main was, under the circumstances stated, *after* it had received notice that gas was escaping into the plaintiff's house, and *after* it had failed or neglected to use reasonable care or proper inspection to discover the location of the leak and to stop it, some evidence of negligence, and the Court would not have been

justified in withdrawing the question of negligence from the consideration of the jury. We are not called on to go farther or to lay down a broader rule than this in the pending case, and we are not to be understood as doing so, though it has been held by Courts of high authority that the escape of gas from the mains underneath the surface of a public street, unless explained, is *prima facie* evidence of some neglect on the part of a gas company. The case of *Smith* v. *Boston Gaslight Co.*, 129 Mass. 318, is an illustration of this doctrine.

The defendant's third and fifth rejected prayers were fully covered by the Court's instructions, and the appellant has, therefore, no reason to complain of the refusal of the Court to grant them.

We find no errors in the instructions given by the Court. There were two opposite theories presented by the evidence. The plaintiff founded his case upon the theory that the gas which escaped into the cellar and was confined there whilst the doors leading into the cellar were closed, rose when Mrs. Bryant entered the cellar and omitted to close the door behind her, and in a few moments came in contact with the lights at the head of the cellar steps and then exploded. It was, according to the testimony of Mrs. Staenglen, at the head or top of these steps that she saw the bluish flame spread out at the moment of the explosion. A slat partition across the cellar was partially blown down towards the street and *away* from the steps, as though the force had been applied from the side next to the cellar steps—the side nearest the lighted gas jets at the head of the stairway. On the other hand assuming, *first*, that the explosion was a gas explosion, it was insisted that the plaintiff was guilty of contributory negligence ; and, *secondly*, denying that it was a gas explosion, it was contended that the explosion was caused by gasoline. The first contention we have already considered. It is not necessary to state the evidence relied on by the appellant to support the second alternative. Suffice it to say that both theories were fairly submitted to the jury

by the instructions given by the learned and accomplished trial Judge, and that upon both theories the law was accurately and clearly announced.   It became then solely the province of the jury to determine the facts ; and if they found, as they were required to find before returning a verdict for the plaintiff, that the gas escaped by reason of the negligence of the defendant ; that the explosion was a gas explosion, and that the act of Mrs. Staenglen in going into the cellar with a lighted lamp and striking matches there, was under all the circumstances, such conduct as a person of ordinary prudence and care would have pursued, they were warranted in finding a verdict for the plaintiff.   If, on the contrary, they found that the explosion was a gasoline explosion, or that being a gas explosion, Mrs. Staenglen had been guilty of negligence in entering the cellar with a lighted lamp or in striking matches there, and that either of these acts caused the explosion, the plaintiff was not entitled to recover.   The second instruction correctly defined where the burden of proof rested.

As we find no error in the rulings of the trial Court, its judgment must be affirmed.

*Judgment affirmed with costs above and below.*

(Decided December 6th, 1895.)