### TIPTON LIGHT, HEAT & POWER COMPANY *v.* NEWCOMER.

[No. 4,354.   Filed May 26, 1903.   Rehearing denied December 17, 1903. Transfer denied April 8, 1904.]

NATURAL GAS.—*Injury from Explosion.—Contributory Negligence.*—Plaintiff was not guilty of contributory negligence precluding a recovery in an action for damages for injuries caused by an explosion of natural gas, where it appeared that natural gas from defendant's pipes was escaping in plaintiff's cellar, and that plaintiff went into the cellar to admit defendant's superintendent who came to locate the leak, and re-mained no longer than was necessary to point out the place where she believed the gas was coming in the cellar, when defendant's superin-tendent, without any warning, lighted a match which caused the ex-plosion.   *pp. 43–47.*

TRIAL.—*Discharge of Juror.—Discretion of Court.*—The question of dis-charging a juror, challenged for cause, was in the sound discretion of the court, where the juror stated that his mind was not entirely free to try the cause, his opinion having been formed by talking to witnesses. *pp. 47, 48.*

SAME.—*Hypothetical Question.—Assuming Facts Not Proved.— Cured by In-struction.*—Error in permitting an hypothetical question which assumed facts not proved was cured by an instruction that the answer should not be considered if there was a failure of proof as to any material facts assumed by the question to be true.   *pp. 48, 49.*

From Miami Circuit Court; *C. A. Cole,* Special Judge.

Action by Izora J. Newcomer against the Tipton Light, Heat & Power Company.   From a judgment for plain-tiff, defendant appeals.   *Affirmed.*

*W. R. Oglebay* and *F. S. Oglebay*, for appellant.

*Dan Waugh, G. H. Gifford, G. J. Gifford, R. B. Beauchamp, W. W. Mount* and *R. H. Proctor*, for appellee.

Henley, J.—Izora J. Newcomer, the appellee, commenced this action against the Tipton Light, Heat & Power Company, appellant, to recover damages on account of injuries sustained by her through the alleged negligence of appellant. The venue was twice changed. The cause originated in Tipton county, and was tried in Miami county. This is the second appeal. *Tipton Light, etc., Co. v. Newcomer,* 156 Ind. 348. Appellee's complaint consisted of three paragraphs, to each of which appellant's demurrer was overruled. An answer in general denial was filed by appellant. There was a trial by jury and verdict for appellee. Over appellant's motion for a new trial, judgment was rendered on the verdict. It is assigned as error by the appellant that the trial court erred in overruling the demurrer to each paragraph of complaint, and in overruling the motion for judgment in appellant's favor upon the facts found by the answers of the jury to special interrogatories returned with the general verdict, and in overruling the motion for a new trial.

We have carefully examined each paragraph of the complaint, and find that the facts therein specifically aver that appellant was guilty of negligence, that appellee was free from fault, and that her injuries were proximately caused by appellant's negligence. The facts averred do not, as counsel for appellant contend, show that appellee was guilty of contributing to her injury.

The facts upon which the action is based, as stated in the complaint, are briefly as follows: Appellant is a corporation organized under the laws of this State for the purpose of furnishing natural gas to the inhabitants of Tipton. Appellee is one of its customers. Appellant owns and operates a system of underground pipe-lines extending through the streets of the city of Tipton, which pipe-lines

are used for the purpose of conveying gas to its patrons. Appellant also was engaged in inspecting, repairing, and keeping in repair all leaks in the service-pipes, and for such purpose reserved the right to inspect all service-pipes. One of its pipe-lines extended east and west on the north side of Walnut street in said city, adjacent to appellee's residence, and extending along the entire south side of appellee's residence lot, to which pipe-line appellant had connected the service-pipe which supplied appellee's dwelling, said service-pipe running underground into the cellar of the dwelling, and from which pipe the gas was conducted in smaller pipes through the cellar to the rooms in the dwelling where used. Appellant also owned and operated in the conduct of its business a high-pressure two-inch line running north and south, which conducted its gas through the city, and which high-pressure line was located in the alley which formed the west boundary to appellee's residence lot. This high-pressure line had been constructed and used continuously for more than eight years prior to the 1st day of June, 1896, and was located about one hundred fifty feet west of appellee's residence. At the time appellant put its said high-pressure line underground, and long prior thereto, there was a public tile drain in said alley, through which the high-pressure line extended, which tile-drain extended the full length of the west end of said lot, and for a considerable distance both north and south therefrom, and was constructed for the purpose of draining the lots bordering on said alley by means of lateral drains leading from said lots into the public drain. From this public drain there was a small underground tile-drain leading up to and into the cellar under the appellee's house. Appellant's high-pressure line was buried in this alley, in close proximity to said large drain and to the lateral drain which led into appellee's lot. Appellee's residence was a large frame building, under which was a cellar of two rooms, walled with brick; said rooms being sep-

arated from each other by a substantial brick wall. Connected with one of the rooms by a small door was a third underground room, constructed for a coal bin, into which the small tile-drain, connected with the large public drain in the alley, terminated. Appellant permitted its high-pressure line in close proximity to the tile-drain in said alley to become and remain out of repair, by permitting it to become weakened, rusted, and split, so that it was incapable of retaining the natural gas contained therein, by reason of which the gas forced its way out of said pipe in large quantities into the large tile-drain nearby, and through said small tile-drain up and into appellee's coal bin, where it accumulated and escaped into appellee's cellar. Appellant, on the 1st day of June, and for many months prior thereto, had full knowledge of the condition of the pipe-line, and of the escape of gas therefrom, and was duly notified and requested to make an examination as to the cause of said gas accumulating in said cellar, and was requested to repair its line. On the 1st day of June, pursuant to such notice, appellant sent its general superintendent, who was charged with keeping in repair its mains, lines, and fixtures, to appellee's residence, for the purpose of locating and ascertaining the cause of such escaping gas, and on reaching the dwelling the superintendent requested appellee to admit him into the cellar for the purpose of making the examination and repair. The door to the only outside entrance to the cellar was closed and bolted at the time of the arrival of the appellant's superintendent, and the appellee, for the purpose of admitting the superintendent, entered the cellar from an inside way, and opened the door and admitted him and another employe of appellant through the door into the cellar, it being necessary for her to do this, as the door could not be opened from the outside. Appellee gave the superintendent all the information she had of the amount and effect of the escaping gas, and pointed out to him a place where she believed the

gas was coming into the cellar. She was standing a few feet from this place, and knew nothing of the means or method of testing for leaks of natural gas, nor of the amount or volume of natural gas which would be dangerous to be lighted by a match. She relied upon the experience and judgment of appellant's superintendent for safety. The superintendent, without giving any warning or notice to her whatever of what he was going to do, and without warning her of any danger connected with his act, lighted a match, and placed it near the place where she pointed out, thereby igniting and exploding the gas, all of which was done before she could move or speak. The exploding gas threw her with great force a distance of from eight to ten feet, against the wall of the cellar, causing her injuries, for which she is claiming damages. Each act done by appellant or by its superintendent, it is alleged in the complaint, was done carelessly and negligently, and it is alleged that the appellee was without any fault contributing to her injury. The general verdict of the jury found every material allegation of the appellee's complaint to be true.

The facts found by the jury in answer to interrogatories are not in irreconcilable conflict with the general verdict. The proximate cause of appellee's injury was the igniting of the gas by appellant's agent. It was unnecessary, careless, and negligent to do this. Naturally, gas will not spontaneously explode. The presence in appellee's cellar of any quantity of natural gas, without regard to whether or not its presence there was caused by appellant's negligence, could not have caused appellee's injury, unless some intervening agent acted upon the gas and caused it to explode. Appellant, with its lighted match, was the responsible intervening agent. If the facts specially found showed that the gas was ignited by the agent of the appellee, or, knowing the presence of the gas in the cellar, appellee had herself caused it to explode, the case would be an entirely different one.

In *McGahan* v. *Indianapolis Nat. Gas Co.,* 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199, it is said: "But we can say, as a matter of common knowledge, that the injury was not due to spontaneous combustion, and that it was impossible without some agency acting upon the leaking gas; therefore, we can say further that but for such agency the injury had not been." In the case above cited the complaint was held bad because it did not show the agency which brought about the explosion, the court further saying: "The presumption most favorable to appellee must be indulged, and that is that the intervening agency was the appellant's [plaintiff's] own act in carrying a lighted lamp, which caused the explosion."

A recovery in the case at bar would undoubtedly be denied if the facts found showed that appellee, knowing the presence of the gas, had caused it to be ignited either by her own act or that of her agent. *McGahan* v. *Indianapolis Nat. Gas Co., supra; New York, etc., R. Co.* v. *Perriguey,* 138 Ind. 414; *Bartlett* v. *Boston Gas Light Co.,* 117 Mass. 533, 19 Am. Rep. 421.

Appellee was in her cellar at appellant's request, having gone there for the purpose of admitting appellant's agent; nor did she remain longer than was necessary to point out the supposed place where the gas was entering the cellar. The facts found further show that the explosion caused by the lighted match might have injured her had she been on the floor above the cellar.

Under the assignment of error that the trial court erred in overruling the motion for a new trial, counsel for appellant argue that error was committed in sustaining the challenge for cause addressed to Edward P. Graham, who was called as a juror. Mr. Graham testified that his mind was not entirely free to try the cause, and that he had formed an opinion that would require some evidence to change, and that his opinion was formed by talking with some persons whom he supposed knew all about the case.

This, we think, clearly placed the question of discharging the juror within the sound discretion of the trial court.

In an early case *(Goodwin* v. *Blachley,* 4 Ind. 438) it was said: "The purity and proximate correctness of judicial proceedings depend chiefly on the impartiality, or, as the books term it, the indifference of those whose duty it is to find the facts. These once settled, there is seldom any doubt about the law. When the jury system is eulogized, it means, of course, a jury composed of men of fair, unprejudiced minds. It goes on the presumption that passion, ill-will, preconceived opinions, and everything unfavorable to a candid exercise of the judgment, is to be excluded from the jury-box. Impartiality can hardly be expected from the clearest intellect, if embarrassed in its action by an opinion both formed and expressed."

The rule announced in *Fahnestock* v. *State,* 23 Ind. 231, cited and approved in *Scranton* v. *Stewart,* 52 Ind. 68, which seems to be the settled rule of law in this State, would have justified the court in permitting the juror to sit in the case; but having held otherwise such action, under the facts presented, will not be disturbed.

It is next contended by appellant that the hypothetical question propounded to appellee's expert witnesses assumed some facts which were not proved or attempted to be proved by any evidence which was introduced upon the trial. The court, of its own motion, instructed the jury as follows: "If therefore, any such opinion has been given, and there has been a failure to prove one or more of these material facts assumed to be true in the question on which said opinion is based, then I charge you that you can not consider such answer to such hypothetical question in arriving at a verdict in this case." Without deciding the tenability of appellant's objection to the hypothetical question, and without deciding whether or not this instruction given and not objected to by appellant, was erroneous, it

is plain that it cured the error, if any, which appellant urges against the question.

We have given the instructions careful consideration, and, taking them together, they fairly state the law applicable to the issues and evidence. There is evidence which, taken alone, would sustain every material fact necessary to appellee's recovery. We find no error which would justify a reversal of the judgment.

Judgment affirmed.