## Southern Indiana Gas Company *v.* Tyner.

[No. 7,442. Filed February 21, 1912.]

1. NEGLIGENCE.—*Gas Companies.—Leakage of Gas.—Complaint.*—A complaint alleging that defendant gas company "defectively made" connection with a "supply pipe that was in a defective condition and unfit for use," that after notice thereof defendant permitted such condition to continue, and on account thereof the gas turned on by defendant was negligently permitted to escape and to accumulate beneath the floor of a moving picture theatre

where it exploded injuring the plaintiff, a spectator, is sufficient on demurrer. p. 480.

2. APPEAL.—*Briefs.—Waiver.*—Failure to discuss an alleged error constitutes a waiver thereof. p. 480.

3. NEGLIGENCE.—*Leakage of Gas.—Interrogatories.—General Verdict.*—Where one paragraph of a complaint alleged that defendant gas company furnished gas to a building used for a moving picture theatre, that, at the time, the pipes therein were more than twenty years old, and were full of holes, that the gas had been continually escaping therefrom, of which defendant had notice, that there were holes in such pipe through which the gas leaked under the floor of such building, that such gas exploded, injuring the plaintiff, a general verdict for plaintiff is not overthrown by answers to interrogatories to the jury that there was no leakage at the meter, that defendant had no notice of a leakage after the gasket was put in the union at the meter, that there was no leakage from the meter or from the company's pipes after the meter was tightened and prior to the explosion, there being other answers showing that defendant had notice of leakage at places other than the meter, and that defendant had notice of the leakage under the floor of the theatre room. p. 480.

4. TRIAL.—*Interrogatories.—General Verdict.*—Answers to the interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith. p. 483.

5. NEGLIGENCE.—*Leakage of Gas.—Defective Pipes.—Notice.*—Where a complaint alleged that defendant gas company turned gas into defective pipes to supply a building in which a moving picture show was to be operated, of which defective pipes defendant had notice, whether such company had, or had not, notice of the leakage of gas, after it repaired the meter, is not controlling. p. 483.

6. NEGLIGENCE.—*Care.—Duty to Use.*—Where a person occupies such a position in relation to another that a want of ordinary care will obviously cause injury to such other person a duty arises to use such care and thus to avoid causing injury. p. 483.

7. NEGLIGENCE.—*Leakage of Gas.—Duty.*—A gas company owes the duty to all lawful users of a building not to supply gas to the pipes in such building unless it has used care commensurate with the known dangers to see that such gas is properly regulated and controlled. p. 484.

8. NEGLIGENCE.—*Leakage of Gas.*—It is negligence on the part of a gas company to supply gas to the pipes in a building, when such company is chargeable with knowledge of leaks in such pipes. p. 484.

9. NEGLIGENCE.—*Leakage of Gas.—Notice.—Agents.*—Where a gas company sends an employe to look after a leak in a gas pipe,

notice to him, or lack of proper repair by him, is chargeable to the company. p. 484.

10. NEGLIGENCE.—*Leakage of Gas.—Notice.—Appeal.*—Where the evidence of defendant gas company's notice of leaks in one of the pipes supplied with gas by it, is conflicting, the verdict is conclusive. p. 485.

11. NEGLIGENCE.—*Gas Companies.—Supplying Gas for Defective Pipes.—Injuring Disinterested Persons.*—A gas company that supplies gas to a building used for a moving picture theatre, knowing, actually, or constructively, of defects in the pipes of such building, or being employed to repair such pipes, negligently fails properly to repair them, is liable to a patron of such theatre who is injured by reason of a gas explosion caused from the leakage of gas from such pipes. pp. 488, 490, 492.

12. NEGLIGENCE.—*Leakage of Gas.—Notice.*—A gas company is chargeable with notice of defects in gas pipes supplying a building, where that degree of care and caution exercised by ordinarily careful and prudent men would have disclosed such defects. p. 490.

13. TRIAL.—*Issues.—Instructions.*—It is the duty of a trial court, where there is some evidence of certain facts within the issues, to give a properly requested instruction applicable to such facts. p. 491.

14. NEGLIGENCE.—*Concurrent.—Leakage of Gas.*—A gas company negligently supplying gas through defective pipes and thereby injuring plaintiff, is not absolved from liability because another company's negligence concurred in producing the explosion complained of. p. 491.

15. NEGLIGENCE.—*Concurrent.—Gas Explosions.—Instructions.*—In an action against a gas company for supplying gas through defective pipes, causing a gas explosion to plaintiff's injury, it is not erroneous to refuse an instruction that the plaintiff should not recover if the explosion was caused by the escape of gas from another company's pipes, where the court had instructed that the plaintiff could not recover unless he showed that the gas causing the explosion was furnished by defendant in the manner alleged in his complaint and that it came from one of the places named in the complaint. p. 492.

16. DAMAGES.—*Excessive.*—Where the evidence shows that the plaintiff was twenty-seven years old, earning $9.50 a week, and that a gas explosion caused an oblique, as well as a transverse fracture of his femur, causing his leg to be permanently shortened and his knee to be stiffened, a judgment for $4,200, cannot be set aside, on appeal, as excessive. p. 493.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Action by Irving E. Tyner against the Southern Indiana Gas Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. E. Bell* and *Ball & Needham,* for appellant.

*J. E. McCullough* and *William C. Welborn,* for appellee.

HOTTEL, J.—Appellee brought this suit against appellant gas company and others for damages for personal injuries caused by a gas explosion in a moving-picture theatre.

The complaint was in two paragraphs, to each of which a separate demurrer was overruled and exceptions saved.

The cause was then put at issue by a general denial. There was a trial by jury, and a general verdict for appellee in the sum of $4,200, with answers to interrogatories.

A motion by the gas company for judgment on the answers to interrogatories, and the separate motion of each appellant for a new trial was overruled, and proper exceptions saved by each, after which the court rendered judgment on the verdict, and this appeal was prayed and perfected by the gas company.

The errors on which appellant gas company relies for a reversal of the judgment below present for the consideration of this court the rulings of the court below on the demurrer to each paragraph of the complaint, the ruling on the motion for judgment for such company on the answers of the jury to the interrogatories, and the ruling on said company's motion for a new trial.

These errors, so far as we deem it necessary to discuss them, will be considered in the order just given. The only objection urged to the sufficiency of the first paragraph of the complaint is that its allegations on the subject of appellant's negligence are conclusions of law drawn by the pleader, and that facts showing negligence are not pleaded; also that there is no allegation that appellant gas company had notice of the "defective conditions" of the pipe in question. This paragraph is lengthy, and we shall set out only

that part of it which presents the objections urged. It alleges that appellant was a corporation engaged in the business of furnishing, to the citizens of Greenfield, gas for lighting and heating purposes, giving the location of its gas-mains in the streets of said city, their location with reference to the building where the explosion is alleged to have occurred, the rental of said building, the names of its owner and occupants, who were also defendants to the suit, the manner in which appellant's supply pipe was connected with its main and with the supply pipe of said building, and the means of controlling and furnishing said supply; that said ground floor of said building was by its occupants being then used for the purpose of picture-show exhibitions, that appellant company had turned its supply of gas from its said main and plant through its said service pipe into the supply pipe of said building, and had attached the meter through which to furnish the gas to the occupants of said building; that a few days after said gas was so turned on, defendants, other than defendant gas company and the owner, namely the defendants in possession of said room, detected the odor of escaping gas in said room and notified defendant gas company; that said defendant reattached said meter so attached by it and again turned on the gas; that those in possession of said premises again detected the odor of escaping gas in said room, and repeatedly notified defendant gas company of the existence of said menace to the safety of its patrons; that the connection of the meter was defectively made by said defendant with a supply pipe that was in a defective condition and unfit for use, and on this account the gas so turned on by said defendant from its said main was permitted to escape, "through the negligence" of said defendant, "and was thus imprisoned immediately beneath the floor thereof by reason of the negligence of said defendant," and that defendant so repeatedly notified of said condition, made no "attempt to remedy the same or any effort to discover the origin thereof, and to prevent the

same," but "being fully apprised of the existence of said danger, permitted said condition to grow more aggravated until the evening of March 25, 1907; that during all the time the picture shows were being given, gas was by defendant gas company and the other defendants negligently permitted to escape and to accumulate under said room; that on the evening of March 25, 1907, said gas, so negligently permitted to escape and accumulate by said defendants, was ignited by reason of a boy's accidentally dropping a lighted match through the grate, thereby causing said gas to explode."

While some of the averments given may be in the nature of conclusions, the facts alleged are sufficient to show notice to appellant gas company of the escaping gas, and, independent of the allegations averring in effect that appellant had been notified, the paragraph contains the further averments that the connection of the meter was by appellant gas company "defectively made" with a "supply pipe that was in a defective condition and unfit for use;" that after being fully apprised of the existence of said danger, said appellant permitted such condition to continue, and on account thereof the gas so turned on by said company was negligently permitted to escape and accumulate beneath the floor of said room. These averments are sufficient to make the complaint good on demurrer as against the objections urged.

The second error on which appellant relies calls in question the second paragraph of the complaint, but is not argued, and is therefore waived.

The third alleged error calls in question the ruling of the court on the motion for judgment on the answers to interrogatories. The interrogatories and answers thereto, on which appellant bases its argument that the overruling of said motion was error, are as follows: (11) "Was there any leakage of gas from or about the meter of defendant gas company during the period of one week

immediately preceding the explosion wherein plaintiff was injured? A. No. (16) When the gasket was put in the union at the meter did defendant gas company have any notice of escaping gas thereafter until the explosion which caused plaintiff's injury? A. No. (17) After the union at the meter was tightened, and the new gasket was put in the connection by Mr. Dailey, an employe of defendant gas company, was there any escape of gas from the meter or pipes of defendant gas company between that time and the time of the explosion? -A. No.''

In this connection it is important to consider the averments of the second paragraph of the complaint. This paragraph, in addition to the averments common to both paragraphs, proceeds, in substance, as follows: The said Southern Indiana Gas Company, had full notice and knowledge that said shows and entertainments were being so given daily and nightly in said building, and that large numbers of people were invited and induced to be present in said building at each and every one of said shows; that at the time of said renting, said pipes beneath said floor of said building were old, having been placed there more than twenty years previous; that immediately prior to the time the Southern Indiana Gas Company placed a gas-meter in said building, as hereinafter averred, natural gas had been continuously escaping from said defendant's pipes in said street into the space beneath the floor of said building, and remaining in large quantities under said floor, and rising through the floor, and permeating the air in and about said building, of which facts all of the defendants herein had full knowledge and notice at the time said meter was so placed; that among other holes in said gas-pipe under said floor in said building was one where a riser had been taken out, and no cap placed thereon or therein, and no other means adopted to prevent gas from escaping from said pipes through said hole; that through the holes and leaks in said pipes the

natural gas escaped under the floor of said building, perme-
ated the atmosphere in and about said building, and ex-
ploded; that said explosion caused the injury to said plain-
tiff, hereinafter averred; that the Southern Indiana Gas
Company could by exercising reasonable diligence, and by
inspection have known, at the time it attached said meter
to said pipes, of the holes in said pipes under said floor, and
of the unfitness of said pipes to contain natural gas; that it
negligently failed and refused to make such inspection; that,
in point of fact, it did know at that time that gas was
and had been escaping from its pipes in the street through
said cut-off into the pipes under said building, notwith-
standing said defendant so negligently attached said meter
that gas escaped from the joints of said pipes; that said de-
fendant wrongfully and negligently opened said cut-off and
permitted said gas from its pipes to pass into said pipes
under said building, knowing at that time and frequently
being notified thereafter, previous to plaintiff's injury, that
said pipes were full of holes, and unfit for use, and well
knowing that the gas was continually escaping from said
pipes.

When this second paragraph of complaint is considered,
there is little, if any, conflict between the general verdict,
which is a finding that such averments were proved, and the
answers to the interrogatories when considered as a whole,
and any apparent conflict between such verdict and the
answers is, in a large measure, cleared up by the answers to
interrogatories eight and ten, which are as follows:
"(8) Previous to the explosion which caused plaintiff's in-
jury, was the defendant, the Southern Indiana Gas Com-
pany, notified by the owners or lessees or any lessee or any
one else that gas was escaping in the Moore building at any
other point than at the meter of the defendant gas company
in said building? A. Yes." "(10) Did the defendant gas
company have notice that there was any leak in the gas-

pipes beneath the floor of the Bijou theater room prior to the explosion in which plaintiff was injured? A. Yes."

It is only where the conflict between the general verdict and the answers to interrogatories is of such an irreconcilable character that both cannot stand that the general 4. verdict is overthrown by such answers. *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512; *Union Traction Co.* v. *Barnett* (1903), 31 Ind. App. 467. No such conflict appears in this case.

The fourth error assigned is the ruling on the motion for a new trial. The ground of the motion first discussed is the sufficiency of the evidence, appellant gas company contending that there was a failure of evidence on the following essential and material points: "(a) There was no evidence of any notice to appellant gas company of the escape of gas after the time the meter was repaired until the explosion. (b) There was no evidence of notice to appellant gas company of the escaping gas which produced the explosion. (c) There was no evidence of notice to appellant gas company of any defect in the pipes beneath the floor, from which pipes the gas escaped that caused the explosion. (d) There was no evidence of any negligence on the part of the gas company."

We think there was some evidence which would have warranted the jury in finding that appellant gas company had actual knowledge and notice of the escape of gas after 5. the repair of the meter, but whether or not said appellant had such actual knowledge after such repair is not controlling, in view of the law applicable to the issues tendered by the pleadings and the evidence introduced thereunder.

"Whenever one person is placed in such a position with regard to another that it is obvious that if the former does not use ordinary care and skill in his own conduct he 6. will cause danger of injury to the person or property of the latter, a duty arises to use ordinary care and

skill to avoid such danger.'' 21 Am. and Eng. Ency. Law
(2d ed.) 470. See also *Heaven* v. *Pender* (1883), 11 Q. B. D.
503; *Peru Heating Co.* v. *Lenhart* (1911), 48 Ind. App. 319.

''Appellant had in its possession and was selling to the
public an agency that was very dangerous unless properly
regulated and controlled, and it owed not only to its
7. patrons in the buildings where it supplied said
agency, but to all legal and rightful occupants of
such buildings, the duty of using care commensurate with
the danger to which it exposed the persons or property of
the occupants of such buildings so supplied with such
agency.'' *Peru Heating Co.* v. *Lenhart, supra.* See, also,
*Ennis* v. *Gray* (1895), 87 Hun (N. Y.) 355, 34 N. Y. Supp.
379; *Clements* v. *Louisiana Electric Light Co.* (1892), 44
La. Ann. 692, 11 South. 51, 32 Am. St. 348, 16 L. R. A. 43;
*Giraudi* v. *Electric Improv. Co.* (1895), 107 Cal. 120, 40 Pac.
108, 48 Am. St. 114, 28 L. R. A. 596; *Griffin* v. *United Elec-
tric Light Co.* (1895), 164 Mass. 492, 41 N. E. 675, 49 Am.
St. 477, 32 L. R. A. 400; *Herbert* v. *Lake Charles Ice, etc.,
Co.* (1903), 111 La. 522, 35 South. 731, 100 Am. St. 505, 64
L. R. A. 101; *Richmond Gas Co.* v. *Baker* (1897), 146 Ind.
600-604, 36 L. R. A. 683.

It is negligence on the part of the gas company to permit
its gas to flow into the pipes of a building when it knows that
such pipes leak, or when it is chargeable with such
8. knowledge. *Huntington Light, etc., Co.* v. *Beaver*
(1905), 37 Ind. App. 4; *Richmond Gas Co.* v. *Baker,
supra; Schmeer* v. *Gas Light Co.* (1895), 147 N. Y. 529, 42
N. E. 202, 30 L. R. A. 653.

Where a gas company sends one of its employes or agents
to look after a leakage or escaping gas which has been re-
ported to it, the knowledge of such agent as to such
9. leak is the company's knowledge, and his negligence
in repairing or remedying the same is the company's
negligence, where as the agent of said company, acting within
his authority as such agent he undertakes to repair or rem-

edy such leak. *Richmond Gas Co.* v. *Baker, supra; Tipton Light, etc., Co.* v. *Newcomer* (1904), 33 Ind. App. 42; *Ferguson* v. *Boston Gaslight Co.* (1898), 170 Mass. 182, 49 N. E. 115; *Lannen* v. *Albany Gaslight Co.* (1871), 44 N. Y. 459; *Peru Heating Co.* v. *Lenhart, supra; Consolidated Gas Co.* v. *Crocker* (1895), 82 Md. 113, 123, 124, 33 Atl. 423, 31 L. R. A. 785.

Wheeler, who installed the meter for appellant testified in chief, in substance, as follows: That when he set the meter he observed the dial hand to see if it moved; that he watched it five minutes, and it did not move. On his cross-examination he testified, in substance, that the dial did move; that it went around once in two minutes while he watched it, but that this was after a stove had been lighted; that he did not know where the stove was, and did not see it lighted, but the hand on the dial did not move until they said the stove was lighted.

The other evidence in the case showed that at the time the meter was installed the gas-pipes were not connected with any stove, and there was evidence tending to show that no one told Wheeler that the stove had been lighted.

Mr. Gregg, a witness for appellant gas company, testified as follows: "If I turn the gas on and the meter stands still, I take it for granted that everything is all right; if it moves as much as five-tenths to a foot, I turn the gas off at the sidewalk till the leak is stopped. If the meter moves, I notify them there is a leak, and they must repair that before their gas will be turned on. If no one is at the house, I leave a note at the house and leave the gas turned off till repairs are made."

Under this and other evidence, and the principles of law before stated, applicable thereto, the jury had the right to infer—to put it most favorable to appellant—that the gas company was negligent in the first instance in turning gas into the pipes of said building when it did and under the conditions then existing; but whether we are correct in this

assumption, the evidence is convincing that after the meter was attached and the gas turned on the presence of escaping gas in and about the building was so noticeable that it was a matter of comment. Many of the patrons of the picture show testified to the noticeable presence of such gas, some of them saying, in effect, that they noticed its presence on each occasion that they attended the show, extending up to the time of the explosion. After installing the meter, appellant gas company was notified at least twice of escaping gas, and twice it sent a man to look after and remedy the trouble. This man discovered a slight leak at the meter connection, not sufficient, if his statement of the leak be taken as true, to account for the manifest presence of gas testified to by numerous other witnesses.

According to witness Harry Levis, he went with Mr. Holt on one occasion to notify the company, and he (Levis) did the talking. He testified as follows: "I told them there was a gas leak over there. The meter or something was wrong. I didn't know what was the matter, that we would like to have them come over to see about it." Mrs. Myers, the woman at the office to whom he talked, said that some one "would come just as soon as they came back." Levis testified further that "Two or three hours later the same man that put the meter on came and put a rubber washer on top of the meter. Three or four days after we notified them the first time, we went over again. Mr. Holt did the talking." Holt testified that he notified the gas company twice when he did the talking. He testified, in substance, that two days after the meter was put in he discovered that gas was escaping. The first time he notified the company he told them that there was a leak up there, and that he would like to have a man sent up to fix it. That was in the morning, and some one came over from the gas company's office in the afternoon. All they did was to tighten up the gasket of the union at the meter. Two or three days after that the odor of gas was again observed, and he went to the office

of the gas company, and told Mrs. Myers that there was a leak out there and he wanted them to come and find it and fix it.  Mr. Daily, from the gas office, called probably within two hours, looked around the room, bent down at the stove, took the unions apart, put in a new gasket and tightened it up, and said it was all right, and we could use gas.  The witness then testified that said Daily tested the meter with a match, and that "after he made these tests was when he said it would 'be safe to use gas.' "

Witness Daily testified that he tightened the union, and did not smell any gas.  On further questioning he said he did not smell it before he tightened it, that he didn't "think it leaked enough to smell."  This witness first testified to making no test for escaping gas except with a match, but after the examination of a number of other witnesses, and after he had gone home, he was again placed upon the stand, and he then testified that "he examined the dial of the meter to see if it moved."  He admitted, however, that he had been a witness in the Personnette trial, on the same matter, and that he had no recollection of at any time in testifying about observing the hand on the dial of the meter to see if it moved.

There is some conflict in the testimony as to what this employe actually did on each occasion when he was sent to look after the escaping gas, but the jury was warranted in concluding from the evidence that on the first occasion he only tightened the meter at the union and on the second occasion he repaired the union at the meter, by putting in a new gasket and stopping the leak at such union, and that he tested the meter with a match to see if it leaked.  He then told the occupants of the building that it was safe—they could use the gas.

The evidence showed that immediately after the explosion an open tee was found in the pipe under the floor of the building from which a riser had been detached, which at one time had been connected with a stove above.

From this evidence the jury had a right to infer that the open tee had caused the explosion, that it had been open during all the time that gas had been so noticeable to the different patrons of the show, who had testified on the subject, and on the occasions when appellant gas company's agent undertook to discover and remedy said leak; that if said agent did not actually know that there was some leak other than that at the meter it was his own fault, and that careful examination and inspection on his part would have revealed that there was a leak other than the one at the meter, which was remedied by him.

While it is true that a gas company is not, under the law, required to inspect the plumbing or the pipes, of the owner of the building to where it furnishes gas, and, gen-

11. erally speaking, would not be liable to the owner of such building for injury done to him or his property on account of a leak of gas from the pipes of such owner, yet it may be negligence on the part of such gas company to turn the gas into, or to allow it to flow through, such pipes, depending on the circumstances and conditions present and existing at the time it turns on the gas and furnishes it to such building. If such company at the time it turns on such gas knows, or after turning it on becomes aware of the fact, that such building is one to which the public is invited, and which the public frequents, and also knows that the pipes in said building are leaking, or if such gas company obtains information that would suggest to a person of ordinary care and prudence that by continuing to furnish gas through such pipes injury would result to persons frequenting such building, it then becomes its duty at least as to such persons to discontinue furnishing gas to such building until such pipes are repaired and made safe; and if such company, when it turns such gas into the pipes of such building, is in possession of facts, or after turning on the gas comes into possession of facts that would suggest to a person

of ordinary care and prudence that the pipes of such building are leaking, or otherwise unsafe for transporting such gas, it then becomes the duty of such company to make such inspection or investigation, as a person of ordinary care and prudence, similarly situated, and handling such dangerous agency, would make to ascertain the safety of such pipes before it furnishes, or continues to furnish, such gas through them; and, failing so to do, if it furnishes, or continues to furnish, such gas through such pipes, it does so at its risk, and becomes liable for an injury resulting therefrom to any frequenter of such building, who is without fault. And if such gas company, after obtaining information that the pipes in a building through which it furnishes gas are leaking, by its agent undertakes to find and repair such leaks, and fails to repair them, or negligently repairs them, and continues to furnish gas through such defective pipes, and injury results to a person who is himself without fault, such company is liable. The negligence in such cases consists not in failing to inspect the pipes of the owner of the building, but rather in furnishing the gas through the pipes after obtaining the knowledge or information that would suggest to a person of ordinary care and prudence the danger of allowing the gas to pass through such pipes. The gas company has its option to refuse to allow its gas to pass through such pipes, and failing to exercise this privilege, when the facts and circumstances are such as to suggest to a person of ordinary care and prudence that it should, it assumes the risks and consequences that may naturally flow from an undertaking involving such peril and hazard to innocent third persons. This must be so, because the gas is not less dangerous when it flows through defective pipes belonging to another person than when it flows through the company's own pipes, and the dangers to which innocent third persons are exposed are identical in both cases.

Whether the gas company should be charged with knowl-

edge of the condition of the pipes in a building through which it allows its gas to be furnished, or whether its knowledge and information was of such a character as to impose on it the duty of ascertaining that such pipes were safe before furnishing or continuing to furnish such gas, depends on the facts and circumstances of each particular case. In other words, the question of negligence in such a case depends on whether the gas company exercised that degree of care and caution that an ordinarily careful and prudent person similarly surrounded and situated would have exercised, and such question is ordinarily one of fact for the jury.

These principles are fundamental and recognized by all the cases heretofore cited, as well as by all other cases where injury has resulted from the negligent management or control of agencies dangerous to life and property.

There was evidence that warranted the jury in finding that appellant gas company was notified that gas was escaping into said building, and that, by its agent, it undertook to find said leak and remedy it. There was evidence, also, from which the jury may have inferred that such agent knew that there was a leak other than that found at the meter, and that having such knowledge such agent, after he repaired the meter, turned the gas on and permitted it to pass through such pipes, at the time telling the occupants of said building that it was "safe to use gas." As to appellant's liability under such circumstances see the following cases: *Huntington Light, etc., Co. v. Beaver, supra; Richmond Gas Co. v. Baker, supra; Schmeer v. Gaslight Co., supra.* See, also, *Consolidated Gas Co. v. Crocker, supra.* In their discussion of this branch of the case, counsel for appellant lose sight of the averments of the second paragraph of the complaint, and the evidence offered in their support. A careful examination of this evidence convinces us that there is not only some evidence tending to support the general verdict as to every

material averment of such paragraph, which is all that the law requires, but that such verdict as to such paragraph is fairly supported by the evidence.

Appellant gas company next insists that the court erred in refusing to give instruction seven, which was, in effect, that if the jury found that appellee was injured by an explosion from natural gas, and that such gas came from pipes other than those of appellant gas company, that it should find for said appellant. This instruction was asked, and error is now predicated on its refusal, on the theory that there was some evidence to the effect that the gas which caused the explosion resulting in appellee's injury came from the pipes of another gas company. It is true, as counsel insist, that where there is evidence before the jury to prove certain facts within the issues, and either party requests a proper instruction on the law applicable to such facts, it is the duty of the court to give such instruction. *Dunn* v. *State* (1906), 166 Ind. 694, 701, 702; *Carpenter* v. *State* (1873), 43 Ind. 371; *Banks* v. *State* (1901), 157 Ind. 190, 203, 204; *Fleming* v. *State* (1894), 136 Ind. 149, 153, 154; *Wollery* v. *Louisville, etc., R. Co.* (1886), 107 Ind. 381, 386, 57 Am. Rep. 114.

There was evidence in this case showing that the main pipe under the floor of the theater building, through which the gas to such building was furnished, was connected at the rear end of the building with a supply main of another company. But there was evidence, also, which we think we might say conclusively showed that the gas supply from said other company had been cut out of said building for three years or more prior to this explosion. But whether there was evidence to which said instruction was applicable, we need not decide. The real question in this case to be determined by the jury, under any view of the evidence, was whether, on account of defendant's negligence, gas escaped and caused the explosion as charged in appellee's complaint, thereby causing his injuries as alleged.

Some other gas company, not a party to this action, may have also been guilty of negligence contributing to this unfortunate result, but such fact, standing alone, would not relieve appellant from liability.

The court by other instructions expressly and specifically told the jury that there could be no recovery against appellant unless the gas causing the explosion that resulted in appellee's injuries was shown to have been furnished "*by defendant gas company in the manner described in the complaint, and that it came from one of the places named in the complaint.*" (Our italics.)    This instruction properly covered every essential feature of the omitted instruction, as favorably to appellant as the law warranted.

What we have said with reference to instruction seven applies with equal force to appellant's instruction nine, refused.

Instruction sixteen, tendered by appellant and refused by the court, was a positive instruction that it was not the duty of appellant gas company to inspect pipes south of the meter in said room beneath the floor thereof.

The pipes referred to in said instruction belonged to the owner of the building.    It is true, as heretofore indicated in this opinion, that, generally speaking, the gas company owes no duty to the owner of a building, in which it furnishes gas, to inspect the pipes belonging to such owner, yet such question is determined by the particular facts and circumstances of each case, and is frequently a question of fact to be submitted to the jury trying the case.    *Schmeer* v. *Gaslight Co., supra.*

In this case there was evidence set out from which a jury might have inferred that appellant gas company's agent, when he installed the meter, knew that the pipes in said building were leaking, or that if he did not then know it, the company was afterwards notified of such leak, and by

an agent undertook to find and repair such leak. Under such evidence the instruction in question was properly refused, because it invaded the province of the jury. Instructions twenty-six and thirty-four, given by the court on its own motion, are not open to the objection urged against them, but, on the contrary, are correct statements of the law applicable to the case made by the evidence.

Appellant gas company urges that the damages are excessive. Appellee was a comparatively young man when he was injured, being about twenty-seven years old, and, under the evidence, was a man of industrious habits, of good health, and capable of earning $9.50 a week. His main injury was a broken leg. There were two fractures, one a transverse fracture of the femur and the other an oblique fracture of the same bone. There was evidence showing that the limb is considerably and permanently shortened, that a callous or bony lump over the fractured part affects the ligaments around the knee joint and materially interferes with the flexing of the limb. Appellee, in addition to losing much time on account of such injury, has suffered much pain and, according to the evidence, will continue to suffer pain on account thereof. He is permanently crippled, and his ability to earn money is necessarily permanently weakened. It is only where "the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption" that this court is authorized to interfere with the verdict on this ground. *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694; *Cleveland, etc., R. Co.* v. *Hadley* (1908), 170 Ind. 204; *Chicago, etc., R. Co.* v. *Vester* (1911), 47 Ind. App. 141.

Taking into consideration the age and habits of the appellee, the character of his injury, and his suffering on account thereof, its permanency, and its influence on his earning

capacity, this court cannot say that the jury was influenced by anything other than the facts, and the law applicable thereto, in assessing the amount of appellee's recovery.

We find no error in the record.   Judgment affirmed.

Felt, C. J., not participating.