AMARILLO GAS CO. v. WALSH. (No. 2202.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1923. Rehearing Denied Jan. 2, 1924.)

1. Appeal and error ⬅1031(6)—Submission of two theories when one not supported by evidence held reversible error.

In action against a gas company for death from asphyxiation, where there was no evidence that the gas was defective in composition and unsafe for use, a charge authorizing finding against defendant on that theory, or on theory of negligence in connection with installation of gas heater, was reversible error.

2. Gas ⬅20(4)—Evidence held sufficient to make question for jury as to negligence in installing heater.

In an action for death from fumes from a gas heater installed by defendant, evidence showing that if the flue was not high enough to provide draft such condition existed when the heater was installed, and that there had been no change subsequent to the installation, held to make a question for the jury as to negligence in installing the heater.

3. Gas ⬅20(2)—Installation of heater held to sustain finding of knowledge of dangerous conditions.

The fact that a gas company installed a gas heater was sufficient to sustain a finding that it knew, or should have known, of the danger, if there was any, that fumes would not be carried away by a flue.

4. Gas ⬅20(1)—General allegation of negligence in installing heater held sufficient.

Where it was alleged that plaintiff's son was "gassed" while in a bathroom, and that defendant did not use ordinary care in furnishing and placing an instantaneous water heater therein, such allegation of defendant's negligence, though general, was sufficient to tender an issue.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Gas** ☞20(2)—**Finding of negligence sustained.**

Where a gas company, which installed an instantaneous gas heater in a bathroom, was notified that other persons had been overcome there just before plaintiff's decedent's death, and made an inspection on the morning of the day of the death, and gave assurance of safety, and continued thereafter to furnish gas to be used in it, such facts would sustain a finding of negligence.

**6. Gas** ☞20(1)—**Petition held not to restrict general meaning of term "gas."**

Petition in action for death by asphyxiation, charging death caused by "gas" escaping from a heater, held not to restrict the general meaning of the term "gas" so as to preclude recovery for death from fumes from the heater rather than unconsumed gas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gas.]

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by D. M. Walsh against the Amarillo Gas Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin and Chas. H. Keffer, all of Amarillo, for appellant.

Veale & Lumpkin, of Amarillo, for appellee.

BOYCE, J. Appellee, Walsh, brought this suit to recover damages for the death of his son, John Walsh. It was alleged that the said John Walsh was "gassed" while in a bathroom for the purpose of taking a bath; that defendant furnished and installed in said bathroom an instantaneous or automatic gas heater, and that it did not use "ordinary care in furnishing, installing, and placing said water heater apparatus in said bathroom," or in "furnishing good and wholesome gas" for consumption therein; that by reason of defendant's negligence in these particulars gas escaped from said apparatus and caused the death of plaintiff's son. Defendant pleaded contributory negligence, and further that the death of John Walsh was due to other causes than asphyxiation; that under the city ordinance it was only required to install suitable piping and appliances for the furnishing of gas to the property line of its customers, and was under no duty with respect to the installation and inspection of fixtures and appliances within the customer's premises.

The case was submitted on a general charge, and appeal is from a verdict and judgment in plaintiff's favor.

The water heater in question was purchased from the defendant by a Mrs. Hove for use in a rooming house run by her. She also employed the defendant to furnish the appliances and connections and install the heater in place. It was accordingly installed in the bathroom of said rooming house. This bathroom was about 6 by 12 feet, and had one door and one window. It had a lavatory as well as a bathtub. The pipe put in by defendant to carry off the consumed gases consisted of a 4-inch pipe which ran up through the ceiling of the bathroom and then across the ceiling joists of the building about 15 feet, and was there connected into a brick flue. John Walsh roomed at this rooming house, and a short time before his death went into the bathroom to shave and take a bath. Some time thereafter he was found dead in the room. At the time he was found the window and door of the bathroom were closed, and the room when opened was filled with fumes of consumed gas and steam. The heater was burning, and the hot water was running in both the lavatory and bath tub, the waste plugs of which were open.

The heater was installed nearly a year before young Walsh's death. There had been no apparent indication of anything wrong about it until a few weeks before this, when another one of the roomers had been made sick while in the bathroom. On the day before Walsh's death another man had, while in the bathroom, been overcome by gas fumes and taken out unconscious. On the latter occasion the gas company was notified and paid to make an inspection, which was done on the morning of the day that deceased was asphyxiated, and the inspector reported to Mrs. Hove that nothing was wrong and the heater was safe for use. Another inspection was made on the day after Walsh's death, and this inspector gave it as his opinion that the flue with which the gas vent was connected was not high enough and would not always furnish sufficient draft. This flue was several feet lower than the peak of the roof, and this witness testified that the draft of flues in such condition would be affected by the direction from which the wind might be blowing. Soon after this time the heater was moved out of this bathroom and a larger one installed in another room connected directly into the flue.

[1] There is no evidence as to the escape of any raw or unburned gas, and there is no evidence as to any chemical defect in the gas furnished for consumption, unless that might be inferred from the fact that the consumed fumes from the gas overcame the deceased. The evidence does not, when considered as a whole, warrant such an inference. It is sufficient to show that the fumes from the combustion of such a large quantity of ordinary gas as this heater would use, when confined in a small unventilated room, would be sufficient to overcome a person in the room. The reasonable deduction from the evidence is that the presence of these consumed fumes

in the bathroom was due to the failure of the vent designed to carry them off to properly perform its function on this occasion.

The court's charge authorized a finding against the defendant on either of two theories of negligence—one in connection with the installation of the heater; the other in furnishing of "gas defective in its composition and unsafe for use." Since the evidence did not in our opinion warrant the submission of the latter theory, there was error in submitting it, which requires a reversal of the case. T. P. Ry. Co. v. Wisenor, 66 Tex. 674, 2 S. W. 667; H. & T. C. Ry. Co. v. Gilmore, 62 Tex. 391; Wood v. G. C. & S. F. Ry. Co., 15 Tex. Civ. App. 322, 40 S. W. 24; Texas Electric Co. v. Jones (Tex. Com. App.) 243 S. W. 980.

[2] Appellant insists that there is no evidence to sustain a finding of negligence on the other issue submitted, and that we should reverse and render the judgment. With this contention we cannot agree. The evidence is sufficient to show that at the time of the death of John Walsh and for several weeks at least before, there was serious danger in connection with the use of this heater for the purpose for which it was installed. If the failure of proper draft was caused by the fact that the flue was not high enough, this condition existed at the time the heater was installed; if it was due to other causes, there is no evidence that there had been any changes made in the connection or in the flue that would affect the draft. The evidence tends to show that no changes of any character had been made. The effect of changing winds is a matter that might have been anticipated. So that the jury would have been warranted in finding that the conditions which resulted in Walsh's death obtained at the time of the installation of the heater, and that potential danger was there all the time, but that the combination of circumstances which would bring about serious results had not theretofore occurred.

The question then is as to defendant's responsibility for the existence of this danger. It furnished the heater and appliances, and was paid for them and their installation. If the use of the heater was dangerous because of defect in the heater or its connections, irrespective of any defect in the flue, it is clear that the defendant might be responsible therefor on a finding that it was guilty of negligence in furnishing and installing apparatus of such character in said room. We are also of the opinion that if the danger was the result of some defect in the construction of the flue or the position of the heater with reference thereto, and the manner of its connection, the defendant might be responsible for the death of John Walsh on a finding that it knew, or should have known, of such defect, and was guilty of negligence under the circumstances in placing the heater in the bathroom and furnishing gas for consumption therein. Sou. Ind. Gas Co. v. Tyner, 49 Ind. App. 475, 97 N. E. 585(8); Hoffman v. Leavenworth Light, Heat & Power Co., 91 Kan. 450, 138 Pac. 632, 50 L. R. A. (N. S.) 574, and notes; notes, 25 A. L. R. 272–274; San Antonio Gas & Electric Co. v. Ocon, 105 Tex. 139, 146 S. W. 164(1), 39 L. R. A. (N. S.) 1046. A reference to these authorities and those cited therein will disclose that it is held in some cases that those engaged in furnishing such dangerous agencies as electricity and gas and delivering the same for use into appliances provided by its customer is bound to inspect such appliances for the purpose of ascertaining whether they are in safe condition for the use contemplated. Other authorities, and perhaps the weight thereof, hold that when the electricity or gas is delivered to a responsible party for use by him, then the producer is not liable for injuries resulting from defects in the instrumentality provided for its use by the customer, unless the producer knew of the dangerous condition of such instrumentality when it supplied the electricity or gas. But the decisions agree that, if the producer knows when it furnishes the electricity or gas that the instrumentalities provided by the user are unsafe, then it may be liable, on a finding of negligence based on such facts, for damages to third persons resulting therefrom. We think the authorities sustain this proposition stated by the court in the case of Southern Indiana Gas Co. v. Tyner, supra.

"While it is true that a gas company is not, under the law, required to examine or inspect the plumbing or pipes of the owner of the building to whom it furnishes gas, and, generally speaking, would not be liable to such owner for an injury done to him or his property on account of a leak of gas from the pipes of such owner, yet it may be negligence on the part of such gas company to turn the gas into, or to allow such gas to flow through, such pipes, depending upon the circumstances and conditions present and existing at the time it turns on such gas and furnishes it to such building. If such company, at the time it turns on such gas, knows, or, after turning the same on, becomes aware of the fact, that such building is one to which the public is invited, and which the public frequents, and that the pipes of such building are leaking, or if such gas company obtains information of a character that would suggest to a person of ordinary care and prudence that injury would result to such persons frequenting such building by its continuing to furnish its gas through such pipes, it then becomes its duty at least as to such persons, to discontinue the furnishing of gas to such building until such pipes are repaired and made safe for its reception."

[3-5] In the gas cases that we have consulted in connection with this proposition, the injury resulted from a leak of unconsumed gas from pipes or connections, but we take it that the same principle would apply in a

case of this kind where the danger resulted from the .consumption of the gas under conditions that produce danger. The fact that the gas company installed the heater in this instance would be sufficient to sustain a finding that it knew or should have known of the danger, if there was any at that time, incident to its use under conditions then existing. The facts, we believe, are sufficient to present an issue for the jury as to whether the defendant was negligent in the installation of the heater in the bathroom, as charged. And just here we may say that, while the allegation of negligence is very general, we think that under the circumstances it would be sufficient to tender an issue on the theory under discussion. Mo. Pac. Ry. Co. v. Hennessey, 75 Tex. 155, 12 S. W. 608. The notice to the gas company of the fact that other persons had been overcome in the bathroom just before Walsh's death, its inspection on the morning of such day, and assurance of the safety in the further use of the heater, and continuing to furnish gas to be thereafter used in it, would, under the authorities referred to, sustain a finding of negligence. There may, however, be some question as to the sufficiency of the pleading to sustain a finding of negligence based on this combination of facts.

[6] It is also contended that the meaning of plaintiff's petition in charging that the death of John Walsh was caused by "gas escaping from the heater" was that unconsumed gas was permitted to escape, with the result stated, and that there was no evidence to sustain a conclusion that any gas of this kind escaped. The petition does not, we believe, necessarily so restrict the general meaning of the word "gas" as used therein.

Many other propositions are presented, but this general discussion is sufficient to dispose of the case and indicate our views as to the law thereof, and particular reference to such propositions is unnecessary.

Reversed and remanded.