## BRYSON v. ATLANTA GAS LIGHT CO.
### No. 12225.

United States Court of Appeals
Fifth Circuit.

Oct. 21, 1948.

Stonewall H. Dyer, Wright Lipford, and Victor K. Meador, all of Atlanta, Ga., for appellant.

H. D. Russell, of Macon Ga., and Oscar Marion Ennis, of Milledgeville, Ga., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and WALLER, Circuit Judges.

McCORD, Circuit Judge.

Evelyn Bryson, plaintiff, brought an action for damages against the defendant, Atlanta Gas Light Company, for the death and loss of services of her thirteen year old son, Gordon Bryson, while he was attending school and residing in a dormitory on the campus of the Georgia Military College at Milledgeville, Georgia.

At the trial it was stipulated by the parties that the death of plaintiff's son was caused by asphyxiation from carbon monoxide fumes which escaped from the basement and boiler room of the dormitory in which he was sleeping into his room above.

The evidence reveals that until the year 1935 the college dormitory in which the plaintiff's son was sleeping at the time of his death was heated and supplied with hot water by stoves using coal as fuel. During that year one of the hot water heaters in the boiler room was converted from a coal burning to a gas burning appliance, and the gas fumes therefrom were vented by running a pipe from the boiler into the chimney of the dormitory. In 1944, nine years after the installation of the first gas water heating appliance, during all of which time no injury or harm had resulted from its use, the college officials had another gas water heater installed in the same boiler room. This new boiler was installed by one L. L. Grimes, an experienced plumber employed for this purpose by the defendant, Atlanta Gas Light Company. It was then vented into the flue in the same chimney which had been used to

remove gas fumes from the boiler room since gas had first been used in the dormitory building in the year 1935. When the installation of the new boiler was completed the appliance was tested to determine whether the venting system was functioning properly. The standard "match test," customarily used in the industry, was employed for this purpose. It consisted of testing the draft from the appliances through the pipe and into the chimney by inserting a lighted match into the path of the draft to ascertain the direction and strength of the air flow. It is without dispute that the venting system was working properly at this time, and that no carbon monoxide accumulated in the boiler room; it was further shown that if the chimney had then been blocked quantities of the lethal carbon monoxide gas would have been immediately precipitated into the boiler room and into the room above where the death occurred.

The morning after the tragedy two experienced employees of the defendant gas company were sent to the college to ascertain the conditions causing death, and to determine exactly what produced them. When they entered the boiler room they discovered a heavy concentration of carbon monoxide gas. A further investigation revealed that the flue in the chimney into which the vent pipes entered was completely blocked by a pile of debris, consisting variously of stone, cement, mortar, soot, and a large number of dead birds known as swallows, or chimneysweeps. Before the tragedy occurred there had been a heavy rainfall in the vicinity, which had the effect of washing the soot and debris further down into the chimney but it is without dispute that almost three days had elapsed between this heavy rainfall and the complete blockage of the chimney, which produced the conditions resulting in death. One witness for plaintiff testified that the stone and mortar partially block-

ing the chimney on the date of the tragedy had evidently been there "for several years", but defendant offered proof that the dormitory in which the death occurred underwent extensive repair in the year 1944, after the installation of the gas heating appliances by Grimes for the defendant gas company, and that this repair work, on the chimney as well as the building, was done by prisoners from the nearby Georgia State Penitentiary. Moreover, it was shown that the death occurred almost 21 months after the installation of the last gas water heating appliance by Grimes for the defendant in the summer of 1944, and during that period no defects in it were noted and no harm had resulted from its use. So far as the record discloses, the use of both gas water heating appliances was wholly without incident from the date of their first use in 1935, until the death of plaintiff's son in April, 1946.

At the conclusion of the evidence, defendant moved for a directed verdict which was granted by the trial court. The sole question presented is whether this action of the trial court was reversible error.[1]

We are of opinion the evidence here failed to present any actionable issue of negligence on the part of the defendant for consideration by the jury, and that the trial court therefore properly instructed a verdict for the defendant. Georgia Ry. & Electric Co. v. Harris, 1 Ga.App. 714, 57 S.E. 1076; Frazier v. Georgia Railroad & Banking Co., 108 Ga. 807, 33 S.E. 996; Cf. Powers v. Atlantic Gas Light Co., 48 Ga.App. 47, 172 S.E. 84; Amarillo Gas Co. v. Walsh, Tex.Civ.App., 257 S.W. 291.

The case of Miller v. New York Oil Company, 34 Wyo. 272, 243 P. 118, upon which appellant chiefly relies, is not controlling or in conflict with our conclusion here. Moreover, there is no substantial

---

[1] In directing a verdict for defendant, the court stated: " * * * Well, that is providential. (Referring to the heavy rainfall) The Gas Company could not be charged with that * * * after they got it installed, * * * I don't think they would have had any right to go over there inspecting the premises. * * * This is the responsibility of the people in charge of the building * * * there isn't any evidence here, as I see it, no substantial evidence that there was anything wrong with that chimney when this installation was made * * * there isn't anything here to go to the jury on. * * * *"

evidence to support appellant's theory that a partial blockage of the chimney existed at the time of defendant's installation in 1944. After the initial installation was approved and shown to have been venting properly, the defendant gas company was under no legal obligation to make continuous inspections of the chimney, and defendant may not justly be held liable for any dereliction of duty or negligence in maintenance and operation of the premises on the part of the college officials, if any such existed. Maynard v. Atlanta Gas-Light Co., 24 Ga.App. 5, 99 S.E. 472.

We find no reversible error in the record, and the judgment is therefore affirmed.