**HENDERSON et al. v. CITY OF CROSS PLAINS.**

No. 2826.

Court of Civil Appeals of Texas. Eastland.

Nov. 3, 1950.

Rehearing Denied Feb. 2, 1951.

Bryan Bradbury and Homer G. Montgomery, Abilene, for appellants.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

GRISSOM, Chief Justice.

J. G. Henderson and L. G. Morris sued the City of Cross Plains for damages caused by an explosion of gas at Henderson's house. The explosion damaged Henderson's house and the house of a neighbor, L. G. Morris. The City owned a gas plant and furnished gas at Henderson's house. Plaintiffs alleged Henderson had a gas meter installed by the City on July 16th; that the next day the Hendersons smelled gas, whereupon "they turned off all of the various connections and utilities in and about the house" and reported to defendant that the odor of gas was present in and about the house and requested defendant "to inspect and make proper repair of said facilities," which notice and request defendant negligently disregarded; that, on the night of July 17th, at Henderson's house there was an explosion of natural gas which defendant had negligently allowed to escape from "*its* mains, lines and pipes in and about the premises of said J. G. Henderson." (Italics ours.) Plaintiffs alleged the City was operating a gas system and its officers knew, or should have known, that gas was escaping about Henderson's premises. That said explosion was caused by the negligence of defendant, "in addition" to the negligence otherwise alleged, as follows: (a) that the City had notice gas was escaping at Henderson's premises and "failed to make necessary repairs" to prevent the escape of gas; (b) that the City was negligent in failing to comply with regulations of the Railroad Commission, as provided in "Article 6053" Vernon's Ann. Civ.St.; (c) that the City was negligent in permitting distribution of gas through pipes and lines which were defective and

leaked, which permitted the accumulation of gas and the explosion thereof; (d) that defendant was negligent in failing to "properly inspect the facilities being used at said time and place," which permitted the accumulation and explosion of gas. In the alternative, plaintiffs alleged the instrumentalities which caused their damage "were under the exclusive management and control of the defendant." The City excepted to plaintiffs' allegations that "the *defendant's* pipes were defective" and leaked because they were too general and did not allege "which pipes plaintiff complains were leaking and where they were leaking" and did not put defendant on notice of what plaintiffs expected to prove. (Italics ours.)

The City alleged it had no control over pipes in Henderson's house and, if they were leaking in and under said house, the leak was due to the negligence of Henderson, or the person Henderson had install them. The City alleged it used ordinary care in installing, inspecting and maintaining "lines up to the meters" and that such lines were the only lines under control of the City and when the meter was installed said lines were tested and there was no leak in defendants' lines.

The evidence showed there was an explosion of gas in the house when Henderson "opened the door at nine thirty" P. M. on July 17th. Mr. Henderson testified the explosion occurred when he entered the "front door of the living room;" that before the explosion he had never had any trouble with his gas equipment, except that he smelled gas on the afternoon of July 16th and he then "cut off his hot water heater;" that when he opened the front door he walked in with a flash light and "the wires caught fire and (there were), seemingly, flares from the electric wires * * *." He testified the South and the West parts of the house were damaged most; that the house was completely torn up.

Mrs. Henderson testified that when they first smelled gas she was unable to find where the gas was escaping; that the fumes were "worse in her bed room and the bath room;" that she smelled gas out-side "near her back door;" that the gas meter was southeast of "her bed room window." The foregoing is the substance of the Henderson's testimony tending to show where and why there was an explosion.

Relative to Henderson's notice to the City, Mr. Henderson testified that he smelled gas and "he told" Lloyd McMillan, the City's gas man; that when he notified Mr. McMillan that he smelled gas, Mr. Mc-Millan said he would be there the next morning. Relative thereto, Mrs. Henderson's testimony was as follows:

"Q. Whom did you tell about the gas at the house? A. Told Lloyd McMillan.

"Q. What did Lloyd McMillan do or say when you told him? A. She was at home and she told her husband and he told him at the pool hall." (The Hendersons were deaf and dumb and testified through an interpreter.)

Mr. Huckaby testified for plaintiffs that the south side and southeast corner of the Henderson home were "torn up worst. The house was just *blowed away from the floor* almost all around and partly standing, the walls, off of the foundation." (Italics ours.) Mr. Huckaby who built the house and installed the plumbing, was asked "at what point did you tie on to the City line." He answered: "A. Not over twelve inches; where it came out from under the house, about twelve inches from the wall, where we tied on to the city line, at my property line, west of the house and south about thirty feet."

He testified that when he built the house he left a place for a gas meter about the middle of the south side of the house and about 15 or 16 inches from the house. Plaintiffs elicited testimony from Huckaby to the effect that he built the house, installed the gas plumbing and tested same and the gas pipes in and under the house were in good condition in March before the explosion in July.

Mr. McMillan testified that when he was notified of a leak in a line which belonged to the City he inspected it immediately; that it was not his duty to inspect lines owned by the consumer; that when he told

Mr. Henderson he would come to see him "when he got time" that he was doing so as an accommodation to Mr. Henderson; that in such cases he usually advised the party to get a plumber.

At the close of the evidence, the City moved for an instructed verdict on the grounds that plaintiffs had failed to prove negligence of the City; that the evidence wholly failed to show that any of the City's lines were leaking; that the evidence showed that, if gas escaped, it escaped inside the Henderson house from facilities under control of the Hendersons. The court granted the motion and rendered judgment for the City. Plaintiffs have appealed.

We have carefully studied the record. The case was apparently filed and tried upon the theory that the City was guilty of negligence in permitting gas to escape from its lines or gas meter. There is no evidence to support same. But, regardless of what theory the case was tried on, the evidence failed to show a breach of duty by the City. The evidence does not show that gas escaped from the meter recently installed outside the house. The fumes were strongest in the bed room and bath room. When the Hendersons entered the front door of the house with a flashlight, according to Mr. Henderson, there seemed to be a flare from the electric wires and there was an explosion that, according to plaintiffs' witness Huckaby, blew the house "away from the floor." Plaintiffs' evidence compels the conclusion that gas escaped in the house from the consumer's line.

It is evident from the record that gas did not escape from lines owned and controlled by the City but from those owned and controlled by the Hendersons. The record does not bring this case within those decisions which recognize the liability of a gas company for negligently failing to cut off gas running into a consumer's lines and keeping the gas cut off until the lines have been repaired, when the City has notice that gas is escaping from the consumer's lines See 38 C.J.S., Gas, § 42, p. 738 and 24 Am.Jur. 686. The City did not have

exclusive control of Henderson's lines and the doctrine of res ipsa loquitur does not apply. The trial court correctly rendered judgment for the City.

The judgment is affirmed.