**LONE STAR GAS COMPANY, Appellant,**

v.

**Rodric E. STRIPLIN, Appellee.**

**No. 16176.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 30, 1960.

Thompson, Knight, Wright & Simmons, and David M. Kendall, Jr., Dallas, for appellant.

Tom Howard, Dallas, and Bob Hendricks, McKinney, for appellee.

MASSEY, Chief Justice.

Judgment was for the plaintiff in a suit for damages on account of personal injuries received when he went to private residential premises to repair a break in the gas line between the meter of the Lone Star Gas Company and the line leading therefrom into the building proper. An explosion resulting in his injuries occurred at about the time he began work.

The case was tried by plaintiff on the theory that although the leakage of gas between the meter and the building proper had been promptly stopped by use of the cut-off valve at the meter, the company, in the exercise of the degree of care required, should have taken prompt steps to determine whether there was some other and additional break in the lines serving the premises and, in view of the fact that there actually was an additional break underground, between the meter and the street, should have taken action which would shut off the supply of gas. Plaintiff believes that had the company stopped the supply of gas from its own lines into those of its consumer it would have prevented the accumulation of gas in quantity sufficient to explode and cause plaintiff's injuries.

The company moved for judgment non obstante veredicto. The motion was overruled and the court entered judgment for the plaintiff based upon the jury's answers to special issues. The company appealed from the denial of its motion for judgment non obstante veredicto, foregoing the filing of a motion for new trial.

Judgment reversed and rendered.

A principal contention of the company on appeal is to the effect that since a Mr. Rouse ran into the meter and broke the connection between the meter and the house, telephoned the personnel at the company's office and reported that he had done so, but that he had cut off the gas at the meter to prevent the escape of gas as the result of the break, and later had paid a valuable consideration to plaintiff for a release, though purporting

to be a Covenant Not To Sue, the company was entitled to be released and was released by virtue of the execution of said instrument. Sims v. Auringer, Tex.Civ.App., Fort Worth 1957, 301 S.W.2d 286, writ ref., n. r. e. We do not reach the question. Rouse did not testify upon the trial, nor did any person who had any actual knowledge of the circumstances whereby the pipe was supposedly broken through the act of Rouse. In fact it was not even proven by evidence of probative force and effect that it was Rouse who called the company and made the report. It is true that the person who called and made the report identified himself as Rouse, and stated that he had struck and broken the gas pipe or connection, but it is not shown that anyone at the gas company knew the man or recognized him by his voice, etc. We believe, therefore, that Rouse was never shown to have been connected with the circumstances which resulted in the break (as to which the company indisputably did have actual notice) by any competent evidence having probative force and effect. We mention this fact in view of apparent misconception of all parties that we should determine the question.

The only notice imparted to the company, by way of information received over the telephone concerning what had occurred at the premises in question consisted of the following: a man identifying himself as Allen Rouse called and talked to personnel at the company's office, including Mr. Ray Cave, who performed inspection work for said company in connection with breaks and leaks. Such individual stated that he had had an accident, in that he had backed into the company's meter with his pickup truck and had broken the nipple between the meter and the house at the premises where plaintiff subsequently sustained his injuries. He was asked whether he had cut the gas off and in reply stated that he had done so.

The company never sent out any representative. It was someone not connected with the company whose action occasioned the visit of plaintiff to the premises. Upon plaintiff's arrival he walked up to the meter, observing that the valve thereat had been turned off, but observing further that gas was escaping from the ground as the result of a break in the pipe between the meter and the street. He went to the street and turned a valve to shut off the gas leading from the company's lines into the consumer's line and waited about five minutes. Then he picked up a shovel, with which he intended to "uncover the pipe" from which he knew the gas had been escaping, and walked up to the point where he had discovered the leak. Just as he arrived, and before he began to dig, the explosion occurred. The time was established as 1:45 p. m., approximately an hour and one-half after the company had received the phone call giving notice of the break between the meter and the house.

■ We have concluded that the evidence placed in the record upon the trial below failed to bring the case within those decisions which recognize the liability of a gas company for negligently failing to cut off gas running into a consumer's lines and keeping the gas cut off until the lines have been repaired, when the company had notice that gas is escaping from the consumer's lines. See Henderson v. City of Cross Plains, Tex.Civ.App., Eastland 1950, 235 S.W.2d 936, error refused, citing 38 C.J.S. Gas § 42, p. 738 and 24 Am.Jur. 686.

In the case before us, as in the case of Henderson v. City of Cross Plains, supra, it was shown that the supplier or transporter of the gas did not have exclusive control of the lines from which the gas was escaping, and therefore the doctrine of res ipsa loquitur does not apply.

Of course it is true that where there is conflicting evidence as to whether there was unreasonable delay in responding to an emergency call and whether the delay was the proximate cause of the damage the determination would be for the jury or other finder of fact. Here, however, it is plain that there was nothing in the notice received by the company which would require

it, as a reasonably prudent person, to believe there was any emergency. The most that might be said of the information received by the company was that it was thereby placed on notice of an inconvenience to the occupant of the premises served through the company's meter in that such occupant could not use gas for heating and cooking, etc. The time was in late August, in Collin County, Texas, and the company was entitled to assume that the inconvenience was relatively insignificant, consideration given the state of Texas weather at that time of the year.

It is stated in 24 Am.Jur., p. 685, "Gas Companies", sec. 29, "Notice of Leak", that in any instance where a defect or break in a company's lines is caused by a third person the company is not liable for injuries resulting from the escape of gas until it has notice and a reasonable time to make repairs; and that notice or knowledge will be presumed where the circumstances are such that the company, by the exercise of proper and reasonable diligence might know of the defect.

Lone Star Gas Co. v. Eckel, Tex.Civ. App., Fort Worth 1937, 110 S.W.2d 936, 939, was a case where a plumber had sustained personal injuries as the result of escaping gas, and where the escape of such gas was occasioned pursuant to the acts of the owner of the premises in extending the gas lines therein. It was from such extension that the gas escaped upon the premises, resulting in an explosion and the resulting injuries. It was held that unless the gas company was actually put on notice that defects existed in the new pipes, or was given such information as would put a reasonably prudent person upon notice that defects probably existed, making the flow of gas on the premises dangerous, the company could not be liable. Further, the court said, "If this were not a sound and necessary rule, then whenever a consumer of natural gas caused a new stove to be installed on his premises by a plumber of his own selection, the gas company could be held liable for damages resulting from a gas leak occasioned by the negligent acts of such plumber."

The dispatch with which a gas company must repair a leak in its own gas pipe to avoid liability is measured by the apparent degree of danger. If the company is on notice that such a pipe is leaking to a dangerous extent the haste with which it should proceed to remedy the situation would of course be greater than in the case where such was not a part of the notice and nothing in the information received would justify the company in concluding that the leak might be immediately dangerous. In the lines of such company's consumers the duty could only extend to the responsibility to shut off the gas until repairs were made, the responsibility to demonstrate the existence of the duty being cast upon a complainant. Before the duty to shut off the gas would exist the company should have actual notice or knowledge of sufficient facts from which notice could be reasonably inferred. After such is established the company would have a reasonable length of time within which to correct the defective condition. See 26 A.L.R.2d 136, "Liability of gas company for injury or damage due to defects in service lines on consumer's premises", and particularly section 4 beginning on page 150, "Notice or knowledge of condition or leaks; turning off gas on notice of leak". See also 138 A.L.R. 870, "Gas company's liability for injury or damage by escaping gas", and particularly section IV beginning on page 879, "Notice of leak".

In the case before us the company never became charged with the duty of shutting off the gas. It had neither notice nor knowledge of facts from which notice could be inferred that there was any leak in its own or in its consumer's lines which required any action on its part. The only notice it had received was that through the act of a third party a leak in its consumer's lines was occasioned between the company's

meter and the building. Simultaneously the company was informed that the leakage had been stopped through the act of turning the valve at the meter. There was nothing in supplement thereof shown which would constitute any evidence of probative force and effect that the company should, in the exercise of ordinary care, have known that a leakage of gas was occurring at the premises at and after the time it received a report that there had formerly been a leakage.

■ Indeed, it was not the leakage of gas from the break reported which permitted the gas to accumulate and explode. Instead, it was leakage of gas from a break in the customer's line between the meter and the street cut-off valve which permitted such gas to accumulate. Although this was a defect and damage because of which the company would be required, upon notice, to take remedial steps to shut off the supply of gas from its own lines, it must be remembered that it was never shown to have had actual notice thereof, nor was any information shown to have been imparted to it which would have placed upon it the duty of inquiry to determine whether there was any such defect and damage, and/or any leakage of gas as a result. It is only in the case of defect or damage as to which a gas company would be chargeable with notice that any requirement of remedial action becomes an obligation. We see nothing in the circumstances of the instant case which constituted notice to the company or placed it on inquiry to determine whether there might be some unreported defect or damage. Huddleston v. Dallas Power & Light Co., Tex.Civ.App., Fort Worth 1936, 93 S.W.2d 199, writ dism.

We are of the opinion that the trial court erred in overruling the company's motion for judgment non obstante veredicto.

Judgment is reversed and rendered that plaintiff take nothing by his suit against the company.