CITY OF INDIANAPOLIS D/B/A CITIZENS GAS AND COKE UTILITY *v.* BATES ET AL.

[No. 19,850. Filed April 12, 1965. Rehearing denied May 26, 1965.]

228

*Partick J. Smith* and *James R. McClarnon,* of Indianapolis, and *Emerson J. Brunner,* of Shelbyville, and *Thompson, O'Neal & Smith,* of Indianapolis and *Brunner, Brown & Brunner,* of Shelbyville, of counsel, for appellant.

*Robert Sheaffer,* of Shelbyville, and *Patrick J. Bar-*

*ton* and *Wilma Turner Leach,* of Indianapolis, for appellees, Donald R. Bates and Jeanne Bates.

*Earle A. Kightlinger, Howard J. Detrude, Jr.* and *Armstrong, Gause, Hudson & Kightlinger,* of Indianapolis, for appellee Sears, Roebuck & Co.

MARTIN, J.—This is a civil action brought by appellees Donald R. Bates and Jeanne Bates, asking damages growing out of an explosion and fire of their house and personal property. Trial was by jury, which resulted in a verdict for appellees Donald R. Bates and Jeanne Bates, assessing damages at $8000. Judgment was duly entered on the verdict.

The appellee Sears, Roebuck & Co. was dismissed from this appeal.

The appellant has assigned as errors as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this case, which is prejudicial to appellant in this:

"1. The court erred in overruling appellant's demurrer to appellees' complaint.

"2. The court erred in overruling appellant's motion for judgment on the jury's answers to interrogatories notwithstanding the verdict.

"3. The court erred in overruling appellant's motion for a new trial."

The appellant's motion for a new trial was based on the following grounds:

"1. The court erred as a matter of law occurring before the trial in overruling defendant's demurrer to plaintiffs' complaint, which demurrer was on the ground that several causes of action had been improperly joined.

"2. The court erred in overruling defendant's motion made at the close of plaintiffs' evidence to instruct the jury to return a verdict for the defendant on legal paragraph 1 of plaintiffs' complaint.

"3. The court erred in overruling defendant's motion at the close of all the evidence to instruct the jury to return a verdict for the defendant on legal paragraph 1 of plaintiffs' complaint.

"4. The verdict of the jury is not sustained by sufficient evidence.

"5. The verdict of the jury is contrary to law.

"6. There was error in assessing the amount of recovery, it being too large.

"7. The court erred in overruling defendant's motion made before judgment to enter judgment against the plaintiffs on the answers to interrogatories returned by the jury herein and notwithstanding the general verdict, which motion was on the ground that said answers are in irreconcilable conflict with the general verdict."

The trial court overruled the motion for a new trial.

The first ground under the motion for a new trial assigned by the appellant was the overruling of defendant's (appellant) demurrer to plaintiffs' complaint for the following reason:

"That several causes of action have been improperly joined."

Appellant's demurrer was overruled.

The appellant's first ground for new trial is not a ground for reversal. In the case of *Gary-Hobart Sav. & Loan Assn.* v. *Strong* (1934), 99 Ind. App. 422, 426, 190 N. E. 373, the court said:

"And even if there was a misjoinder of causes of action herein, and we are not admitting such to be the fact, such error is harmless . . . Indiana Statutes Ann. Burns §2-1009 . . . . No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action." *Morgan* v. *Henry Brick Co.* (1931), 92 Ind. App. 478, 176 N. E. 237; *Coan* v. *Grimes* (1878), 63 Ind. 21.

In the case of *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 138, 100 N. E. 681, the Supreme Court said:

"No judgment shall be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action . . . Indiana Statutes Ann. Burns §2-1009 . . . . The above section expressly prohibits a review of a judgment expressly overruling a demurrer for misjoinder of causes of action." *Pittsburgh, etc., R. Co.* v. *Brown* (1912), 178 Ind. 11, 97 N. E. 145, 98 N. E. 625; *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 76 N. E. 529; *Brown* v. *Bernhamer* (1902), 159 Ind. 538, 65 N. E. 580; *Carger* v. *Fee et al.* (1895), 140 Ind. 572, 39 N. E. 93; *Coan* v. *Grimes, supra; City of Huntington* v. *Stemen* (1906), 37 Ind. App. 553, 77 N. E. 407.

Under our statutes (Burns' §2-1009 1946 Replacement) a reversal of judgment for overruling a demurrer for misjoinder of causes of action is expressly prohibited. *Pittsburgh, etc., R. Co.* v. *Brown, supra; Boonville Nat. Bank* v. *Blakey, supra; Brown* v. *Bernhamer, supra; Murphy* v. *Branaman, Adm.* (1901), 156 Ind. 77, 59 N. E. 274; *Armstrong et al.* v. *Dunn et al.* (1896), 143 Ind. 433, 41 N. E. 540.

We hold that there was no reversible error committed by the trial court in overruling the defendant's (appellant) demurrer.

The 7th ground, under the motion for a new trial, reads as follows:

"7. The court erred in overruling defendant's motion made before judgment to enter judgment against the plaintiffs on the answers to interrogatories returned by the jury herein and notwithstanding the general verdict, which motion was on the ground that said answers are in irreconcilable conflict with the general verdict."

Under the argument portion of appellant's brief

"B", interrogatories 14, 15, 16 and 17 and the jury's answers were as follows:

"14. Did the plaintiffs ever notice any gas smell in their home after December 20, 1956, down to and including June 30, 1958?

"Answer: No.

"15. Did plaintiffs ever notify defendant Citizens Gas of any gas leaks in plaintiffs' home after December 20, 1956, up to and including June 30, 1958?

"Answer: No.

"16. Was the gas range in plaintiffs' home at 3721 Pleasant Run Parkway, South Drive, Indianapolis, Indiana, connected to the gas line with a copper tube or tubing?

"Answer: No.

"17. Was the gas range in plaintiffs' home at 3721 Pleasant Run Parkway, South Drive, Indianapolis, Indiana, connected to the gas line with a flexible brass tube or tubing?

"Answer: Yes."

The specific acts of negligence complained of in appellees' paragraph I of complaint are herein set out in rhetorical paragraph 13.

"13. Acting by and through its agents and employees, Defendant Citizens Gas was careless and negligent in the following particulars:

"(a) It carelessly and negligently failed to warn Plaintiffs that flexible brass hose was prohibited as unsafe for use in connecting domestic gas ranges with house piping, and was unsafe for use in connecting the gas range in Plaintiffs' house with the pipe running to the gas meter.

"(b) It carelessly and negligently failed to test the flexible brass hose and its fittings and connections, through which gas was supplied to the range, in order to determine whether or not said hose, fittings, and connections were gas-tight, although it had been notified by Plaintiffs that gas was leaking at the range.

"(c) It carelessly and negligently failed to inspect the fittings and connections between the flexible brass hose and the house pipe leading to the meter to determine whether or not said hose was properly connected to carry gas safely from the meter to the range, although it had been notified that gas was leaking at the range.

"(d) It carelessly and negligently failed to discover that the flexible brass hose and its fittings and connections, through which gas was supplied to the range, were defective and unsafe and unlikely [likely] to permit the escape of gas and cause damage to Plaintiffs and their property, when it knew or in the exercise of reasonable care should have known that said hose, fittings, and connections were defective and unsafe

"(e) It carelessly and negligently failed to repair or replace the flexible brass hose and its fittings and connections, through which gas was supplied to the range, although it knew or in the exercise of reasonable care should have known that said hose, fittings, and connections were defective and unsafe and likely to permit the escape of gas and cause damage to Plaintiffs and their property.

"(f) It carelessly and negligently failed to shut off the supply of gas to Plaintiffs' premises after it knew or in the exercise of reasonable care should have known that the flexible brass hose and its fittings and connections, through which gas was supplied to the range, were defective and unsafe and likely to permit the escape of gas and cause damage to Plaintiffs and their property."

In *Tribune-Star Publ. Co.* v. *Fortwendle* (1953), 124 Ind. App. 618, 622, 115 N. E. 2d 215, (transfer denied), the court said:

"However, it is also true that, in determining whether there is a conflict between the general verdict and the answers to interrogatories, every reasonable presumption and inference must be indulged in favor of the general verdict, and nothing will be presumed or inferred in favor of the answers to interrogatories as against the general verdict." *Gary Railways* v. *Dillon* (1950), 228 Ind.

558, 92 N. E. 2d 720; *Neuwelt* v. *Roush* (1949), 119 Ind. App. 481, 85 N. E. 2d 506, (transfer denied); *Tucker Freight Lines, Inc.* v. *Gross* (1941), 109 Ind. App. 454, 33 N. E. 2d 353, (transfer denied).

On appeal, the reviewing court will consider only the pleadings, general verdict and interrogatories and answers, in determining whether a judgment should have been entered on answer to interrogatories. *Denham et al.* v. *Degymas et al.* (1958), 237 Ind. 666, 147 N. E. 2d 214; *Inter State Motor Freight System* v. *Henry* (1942), 111 Ind. App. 179, 38 N. E. 2d 909, (transfer denied); *Fostoria Oil Co.* v. *Gardner* (1919), 72 Ind. App. 509, 124 N. E. 467.

It is only where the conflict between the general verdict and the answers to interrogatories is of such an irreconcilable character that both cannot stand that the general verdict is overthrown by such answers. *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 483, 97 N. E. 580; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512, 69 N. E. 253; *Union Traction Co.* v. *Barnett* (1903), 31 Ind. App. 467, 67 N. E. 205.

Since no such conflict appears in this case, the trial court did not err in overruling the defendant's motion made before judgment to enter judgment against the plaintiffs on the answers to interrogatories returned by the jury.

Appellant also urges its assignment of error No. 3, that the court erred in overruling appellant's motion for a new trial, and presents causes numbered 2, 3, 4, and 5 of such motion.

The four points are discussed together since they raise substantially identical questions of fact and law.

The pertinent part of the evidence in substance, most favorable to appellees is as follows. On or about the first day of June, 1951, a Kenmore gas range was installed in appellees' home and plumbers working for the contractor installed said gas range along with a flexible brass tube connecting said flexible tube to the riser pipe and to the stove. Thereafter on or about June 2, 1951, the appellant was notified and an employee of appellant entered upon the premises thereof to test all house lines and installations. Said employee tested the Kenmore gas range with a manometer and in so doing observed and saw the flexible brass tube connecting the stove with the riser pipe. That thereafter the appellant turned gas into the home of the appellees.

On the 19th day of May, 1956, a representative of the appellant examined the orifices on the Kenmore gas range and at the other gas utilities in appellees' home and in so doing, at the request of Mrs. Donald Bates one of the appellees, checked the stove and looked behind the same and observed the flexible brass tube. On the 18th day of December, 1956, the appellees notified appellant of a leak at the range and an employee of appellant went to the home of appellees and tested all of the gas lines in appellees' home, including the line connecting the Kenmore gas range again with a manometer and again looked behind appellees' Kenmore gas range and observed and saw the flexible brass tube. On December 20, 1956, an employee of the appellant checked the dryer installation to make sure that it had been repaired and at the request of Mrs. Donald Bates one of the appellees, again examined and thoroughly checked the Kenmore gas range and looked behind same and again saw the flexible brass tube. That on and after December 18, 1956, neither of the appellees ever smelled gas in their home up to and including June 30, 1958, the time of the explosion.

There were in effect regulations of the appellant which provided that pipe used for gas shall be standard black pipe and that copper tubing is not permitted due to the reaction of the gas with the zinc or copper and also that all gas pipe fittings should be black malleable. Also, as part of the rules and regulations, it was provided that flexible gas tubing is not permitted except on portable appliances and that only standard black wrought iron or steel pipe shall be permitted in buildings and that galvanized pipe or copper tubing will not be permitted due to the reaction of gas with zinc or copper. Also, in respect to this, there were further rules and regulations concerning domestic ranges stating that they shall be connected to the gas pipe with rigid pipe or approved semi-rigid tubing and in such regulation it provides for the use of certain gas hose on portable appliances which is separate and apart from domestic ranges.

The record is replete with testimony, both by appellees' expert witnesses and appellant's expert witnesses and appellant's co-defendant's expert witness, that brass is a copper alloy and that the flexible brass tube contained 85% copper and that the ferrule which sealed the brass hose to the brass connector contained 80% copper and 15% zinc and that sulphur reacts with both copper and zinc.

A wholesaler for plumbers' supplies testified that he had been acquainted for the past twelve years with the custom and usage in the trade for the use of flexible brass hose in the City of Indianapolis with Citizens Gas & Coke. He further testified that the custom and usage, as he understands it, in Indianapolis is that copper is not allowed on gas lines. This witness said he has seen a brass tube similar or like Plaintiffs' Exhibit 15.

The appellant's foreman, although he did not make

or supervise any of the tests made by the appellant immediately after the explosion said that a manometer test was made and that in order to make such a test, appellant would have had to have turned off the gas at the riser pipe where the flexible brass tube connected. He testified that the results of said test were that all of the gas lines in the house were air-tight and did not leak. In connection with portable appliances, the appellant's serviceman testified in effect that he knew of no other kind of portable burner other than Bunsen burners or burners in restaurants under grills and steam tables. The Director of the Indianapolis Fire Prevention Bureau said that in his opinion the explosion was caused by gas from a leak in the gas line and that the gas had escaped from the copper ferrule at the hairline crack in the flexible brass tubing. The testimony of the Photographic Captain of the Indianapolis Fire Department and the testimony of the Fire Chief was that both had examined the rafters, roof boards and that they found no other cause of the explosion.

Two neighborhood witnesses testified that they both felt the terrific explosion and both smelled the heavy presence of gas in the air. Plaintiffs' Exhibit 9 clearly shows that gas had escaped by the burning of the wall, paint and plaster directly above the place on the riser pipe where the flexible brass tube was connected from the riser pipe to the stove.

A metallurgist testified that in one area on this tubing it showed appearance that was completely different of an escapeture of something to that particular area, and he was of the opinion that this was the point where it could have escaped and gone through the islands into a porosity into the outside air. He said by this he meant that sulphur, such as is contained in ap-

pellant's gas, reacts with copper and zinc and would corrode the copper in the brass tube, which contained 80% copper; and the ferrule contained 85% copper and 15% zinc. Once gas began to escape, he said, then in addition to further corrosion there would be erosion, which amounts to small particles wearing off and that, in his opinion, this is what caused the leak and the resulting explosion. Another metallurgist testified that the fact that it was not a clean metal surface and was discolored was evidence of corrosion.

Where defendant's negligence is alleged as consisting of several separate and distinct acts or omissions, it is sufficient for the plaintiff to prove any one or more of such acts or omissions as being the negligence which caused the injury.

A plaintiff has a right to allege several acts of negligence in a single paragraph of complaint and recover upon proof of all, or any one, of said acts. *Chi. & Cal. Dist. Transit, etc.,* v. *Stravatzakes* (1954), 129 Ind. App. 337, 156 N. E. 2d 902; *New York, Chi., etc., R. R. Co.* v. *Henderson* (1957), 237 Ind. 456, 146 N. E. 2d 531; *Burks* v. *Walters* (1957), 127 Ind. App. 358, 141 N. E. 2d 872; *Johnnie J. Jones Exposition* v. *Terry* (1945), 116 Ind. App. 189, 63 N. E. 2d 159.

It is for the trier of the facts, in this case, the jury, to reconcile, to reject, or accept part of disputed or conflicting testimony, even when made by the same witness and that witness is a party to the action. *Gates et al.* v. *Petri* (1957), 127 Ind. App. 670, 677, 143 N. E. 2d 293; *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. 2d 190, (transfer denied).

The jury is the judge not only of the weight of the

evidence, but also the credibility of the witnesses and not the reviewing court. *Gates et al.* v. *Petri, supra; Cotner* v. *State* (1909), 173 Ind. 168, 89 N. E. 847; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Weir* v. *Lake* (1942), 112 Ind. App. 318, 41 N. E. 2d 828, (transfer denied); *Smith, Executrix* v. *Strock, Executor* (1945), 115 Ind. App. 518, 60 N. E. 2d 157.

As we have many times said, this court will not weigh the evidence. We may look only to that evidence and the reasonable inferences therefrom most favorable to the appellee. *Gates et al.* v. *Petri, supra; Burks* v. *Walters* (1957), 127 Ind. App. 358, 141 N. E. 2d 872; *Sims Mtr. Transp. Lines, Inc.* v. *Davis, Admx.* (1955), 126 Ind. App. 344, 130 N. E. 2d 82, (transfer denied); *Thompson et al.* v. *Dyar* (1955), 126 Ind. App. 70, 130 N. E. 2d 52.

We hold that the court did not err in overruling defendant's (appellant) motion made at the close of plaintiffs' evidence to instruct the jury to return a verdict for the defendant on legal paragraph I of plaintiff's complaint. Nor did the court err in overruling the defendant's (appellant) motion at the close of all of the evidence to instruct the jury to return a verdict for the defendant on legal paragraph I of plaintiffs' complaint.

We further hold that the verdict of the jury is sustained by sufficient evidence.

The evidence in this case shows that the appellant made several service calls at appellees' home; that during these visits the appellant, through its agent-employees, observed and had actual notice that the flexible brass tube was being used as a connector between the gas range and the riser pipe through which gas passed.

A principal is charged with the knowledge of that which his agent by ordinary care could have known where the agent has received sufficient information to awaken inquiry. *Travelers Insurance Co.* v. *Eviston* (1941), 110 Ind. App. 143, 37 N. E. 2d 310.

Knowledge of material facts acquired by an agent in the course of his employment, and within the scope of his authority, is the knowledge of the principal, and where no actual knowledge of the principal is shown, the rule will be given the effect on the theory of constructive knowledge, resting on the legal principal that it is the duty of the agent to disclose to his principal all material facts coming to his knowledge, and, upon the presumption that he has discharged that duty. *Nat. Mutual Ins. Co.* v. *Bales* (1923), 81 Ind. App. 302, 306, 139 N. E. 703, (transfer denied).

In the case of *Field* v. *Campbell* (1904), 164 Ind. 389, 396, 72 N. E. 260, the court quoted with approval:

"[N]otice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject-matter of his agency; for, upon general principles of public policy, it is presumed that the agent has communicated with facts to the principal; and if he has not, still the principal, having entrusted the agent with the particular business, the other party has the right to deem his acts and knowledge obligatory upon the principal."

The law is well settled that the knowledge of the gas company employees and agents is the knowledge of the gas company. In *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 488, 97 N. E. 580, the court said:

". . . [I]f such gas company obtains information that would suggest to a person of ordinary care

and prudence that by continuing to furnish gas through such pipes injury would result to persons frequenting such building, it then becomes its duty at least as to such persons to discontinue furnishing gas to such building until such pipes are repaired and made safe; and if such company when it turns such gas into the pipes of such building, is in possession of facts, or after turning on the gas comes into possession of facts that would suggest to a person of ordinary care and prudence that the pipes of such building are leaking, or otherwise unsafe for transporting such gas, it then becomes the duty of such company to make such inspection or investigation, as a person of ordinary care and prudence, similarly situated, and handling such dangerous agency, would make to ascertain the safety of such pipes before it furnishes, or continues to furnish, such gas through them; and, failing so to do, if it furnishes, or continues to furnish such gas through such pipes, it does so at its risk, . . . . The negligence in such cases consists not in failing to inspect the pipes of the owner of the building, but rather in furnishing the gas through the pipes after obtaining the knowledge or information that would suggest to a person of ordinary care and prudence the danger of allowing the gas to pass through such pipes. The gas company has its option to refuse to allow its gas to pass through such pipes, and failing to exercise this privilege, when the facts and circumstances are such as to suggest to a person of ordinary care and prudence that it should, it assumes the risk and consequences that may naturally flow from an undertaking involving such peril and hazard to innocent third persons. This must be so, because the gas is not less dangerous when it flows through defective pipes belonging to another person than when it flows through the company's own pipes, and the dangers to which innocent third persons are exposed are identical in both cases.

"Whether the gas company should be charged with knowledge of the condition of the pipes in a building through which it allows its gas to be furnished, or whether its knowledge and information was of such a character as to impose on it the duty of ascertaining that such pipes were safe be-

fore furnishing or continuing to furnish such gas, depends on the facts and circumstances of each particular case. In other words, the question of negligence in such a case depends on whether the gas company exercised that degree of care and caution that an ordinarily careful and prudent person similarly surrounded and situated would have exercised, and such question is ordinarily one of fact for the jury."

The Indiana cases relative to the degree of care have adopted the rule of ordinary care. *City of Indianapolis, etc. v. Walker et al.* (1960), 132 Ind. App. 283, 168 N. E. 2d 228, (transfer denied).

Upon the record in this case there appears evidence from which the jury could have and apparently did infer that the circumstances were such that the appellant knew or should have known under such circumstances, that the escape of the dangerous and highly explosive gas from its confines might result in damage to the property of the appellees. The negligence consists of the knowledge or information that would suggest to a person of ordinary care and prudence the danger of allowing the gas to pass through such flexible brass tube. The evidence and reasonable inferences derived therefrom show that the appellant gas company did enter the premises, examine and test all appliances and gas pipes and tubing in such home and thereby upon assuming such duties became responsible for its negligence. Under the circumstances of this case, it then becomes a question of fact for the jury.

The appellant has cited many cases from this state and foreign states. These cases are all distinguishable from the facts in this case, and it would not serve any purpose to set them out and would unduly lengthen this opinion.

It is the appellant's contention that the jury's finding

that the breach of warranty by the defendant Sears, Roebuck & Co. proximately caused the damage, must of necessity be a conclusive finding that this was the sole proximate cause." With this contention we cannot agree. There may be several proximate causes attributable to a particular damage.

In *Beaning* v. *South Bend Electric Co. et al.* (1910), 45 Ind. App. 261, 279, 90 N. E. 786, this court said:

> "There may be several proximate causes of a particular injury, some of them innocent, and for which no liability exists on the part of any one; others may be the result of tortious acts of one or more. When this is true, each of the tort-feasors is jointly and severally liable for the injury resulting, and the fact that accidental or innocent causes or conditions and concurring wrongful acts of other parties join to produce the given injury does not affect the liability of any one of the wrongdoers. Here, if the electric company were guilty of negligence, which proximately contributed to appellant's injury, the fact that the attachment of the telephone company's wire cable to the telephone seat concurred in producing the injury, and that for this incidental connection the telephone company was not guilty of negligence, would not affect the liability of the electric company. The connection between the cable seat and the cable was a mere condition, which in and of itself would have been entirely harmless. It was a condition upon which the electric light company's negligence operated and produced the injury."

In the Beaning case, the electric company and the telephone company were charged as being joint tort-feasors, as were the appellant and Sears in this case under legal paragraph I of the appellees' complaint.

Appellant asserts that the verdict against Sears, Roebuck & Co. is a finding as a matter of law of an intervening cause. With this we do not agree. The appellees' paragraph IV was against Sears, Roebuck &

Co. on their implied warranty that the Kenmore gas range and flexible brass hose sold to appellees were fit for gas of the nature sold by the appellant and was a separate cause of action. In the case of *Phares* v. *Carr* (1952), 122 Ind. App. 597, 603, 106 N. E. 2d 242, (transfer denied), the court said:

"Reasonable foreseeability is the fundamental test of proximate cause. This rule is not changed by the fact of an intervening act or agency. See 65 C.J.S., Negligence, §264(b), page 1189. Also, it has been stated that the proximate cause is a question for the court only when the facts are plain and undisputable, but if there is some reasonable doubt as to the proximate cause of an injury, it is a question for the jury. See 65 C.J.S., [Negligence], §264(a), p. 1187.

"As stated by this court in the case of *McIntosh* v. *Pennsylvania R. Co.* (1941), 111 Ind. App. 550, 559, 38 N. E. 2d 263:

"'"... The fundamental test under the doctrine, as determined by the decisions of this State, is the test of foreseeability." We agree with the appellee that under our decisions the fundamental test is the test of foreseeability. In the case of *Swanson* v. *Slagal*, Administratrix (1937), 212 Ind. 394, 413, 8 N. E. 2d 993, the Supreme Court, after analyzing many of the Indiana cases, has this to say: "As stated above, this court has utilized as a practical rule of legal cause the test of foreseeability. The result of the holding in the foregoing cases is that if the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by the plaintiff is one of a class which was reasonably foreseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. It is the function of the jury to determine whether the defendant's act is a substantial factor in producing the injury of the plaintiff and whether such injury was reasonably foreseeable at the time of the defendant's misconduct."...' "

Under the facts before us, we are of the opinion that the issues of proximate causes and foreseeability were questions for the jury.

The appellees had two causes of action. One was against Sears, Roebuck & Co. under legal paragraph IV pertaining to the contract of sale. Sears impliedly warranted that the gas range and attached hose and fitting were reasonably fit for the purpose of using gas safely. Under this paragraph and the evidence, the jury returned a verdict for the appellees. The appellees also had a cause of action against the appellant and Sears, Roebuck & Co. as joint tort-feasors. The jury found the appellant liable on the negligence theory but specifically found Sears to be free from any negligence which could have concurred with the negligence of the appellant. *Public Service Co. of Ind.* v. *Daleby* (1949), 119 Ind. App. 405, 85 N. E. 2d 368, (transfer denied).

We hold that the verdicts rendered by the jury are not inconsistent nor irreconcilable.

A verdict or decision cannot be disturbed as contrary to law unless the evidence is without conflict and leads to but one reasonable conclusion and the jury or trial court has reached a contrary conclusion. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669; *Rowe* v. *Johnson* (1945), 223 Ind. 289, 291, 60 N. E. 2d 529; *Strasser et al* v. *Powell et al.* (1961), 131 Ind. App. 508, 513, 172 N. E. 2d 439.

The evidence in this case was not without conflict. However, there was ample evidence to support the verdict of the jury and we cannot say that reasonable minds would have only reached a contrary result. Therefore, the verdict is not contrary to law.

The appellant's 6th ground under his motion for a new trial is that "There was error in assessing the amount of recovery, it being too large." The █ evidence in this case shows that the appellees were damaged in the amount of $16,000 yet the verdict rendered against the appellant was for $8000. In view of this, we cannot say the damages were unreasonable or too large. There is no substantial error presented in the amount of recovery which would justify a reversal.

The trial court did not err in overruling the appellant's motion for a new trial.

Finding no reversible error and being of the opinion that the case below was fairly tried on its merits, we hereby affirm the judgment.

Carson and Prime, JJ., concur.

Faulconer, C. J. not participating.

NOTE.—Reported in 205 N. E. 2d 839.