CITY OF INDIANAPOLIS, ACTING BY AND THROUGH JOHN E. OHLEYER, DONALD J. ANGUS, J. RALPH FENSTERMAKER, BRODEHURST ELSEY, JOHN BURKHART, HOWARD R. MEEKER, ROY SAHM, DIRECTORS OF THE DEPARTMENT OF PUBLIC UTILITIES OF THE CITY OF INDIANAPOLIS, D/B/A CITIZENS GAS & COKE UTILITY, AND HOWARD H. ALBAUGH AND CHARLES W. McCLELLAN, JR. v. WILLIAM J. FALVEY AND IRENE FALVEY, HALL-NEAL FURNACE COMPANY.

[No. 172A43.   Filed June 11, 1973.   Rehearing denied July 18, 1973.
Transfer denied October 23, 1973.]

*Patrick J. Smith, James R. McClarnon, Smith Morgan &
Ryan,* of Indianapolis, for appellant, Citizens Gas & Coke
Utility; *Jack C. Brown,* of Indianapolis; *Frederick J. Graf,
Martz, Beattey, Hinds & Wallace,* for appellants, Howard H.
Albaugh and Charles W. McClellan, Jr.

*Charles G. Reeder, Thomas N. Olvey, Johnson & Weaver,* of Indianapolis, for appellees, William J. Falvey and Irene Falvey.

ROBERTSON, P.J.—The defendant City of Indianapolis (Citizens Gas) and the two gas plumber defendants (Albaugh and McClellan) are appealing a judgment in the principal sum of $34,556.41. The judgment represents the value of the damages resulting from a gas explosion which destroyed the plaintiff's (Falvey) home. The defendant Hall-Neal Furnace Company has been found not liable and is no longer concerned with the case.

The trial court's Findings of Facts and Conclusions of Law pertinent to the appeal read:

"1. On the 12th day of September, 1962, the plaintiffs were the owners of certain real estate located in Marion County, Indiana, commonly known as 3301 Busy Bee Lane, Indianapolis, Indiana, consisting of a lot improved with a one-story dwelling house.

\* \* \*

3. On the 12th day of September, 1962, the defendant City of Indianapolis et al., d/b/a Citizens Gas & Coke Utility was a municipal corporation of the State of Indiana duly authorized to supply inflammable gas and gas appliances to the public in the City of Indianapolis, County of Marion, State of Indiana.

4. On the 12th day of September, 1962, the defendant, City of Indianapolis et al., d/b/a Citizens Gas & Coke Utility, maintained a system of mains and pipes for the transmission of gas to its customers, which included plaintiffs.

5. The gas supplied by the defendant, City of Indianapolis, et al., d/b/a Citizens Gas & Coke Utility, was a highly inflammable and explosive substance.

6. On the 12th day of September, 1962, at approximately 5:15 p.m., the defendants, Howard H. Albaugh and Charles W. McClellan, Jr., commenced with the work and labor necessary to convert plaintiffs' furnace to gas.

\* \* \*

8. On the 12th day of September, 1962, at approximately 6:30 p.m., a break in the gas line occurred in plaintiffs' basement somewhere between the point at which the gas

service entered plaintiffs' basement and the outlet side of the gas regulator.

9. On the 12th day of September, 1962, at approximately 7:20 p.m., the accumulation of gas resulting from the break in the gas line in plaintiffs' basement was ignited which resulted in and caused an explosion which damaged plaintiffs' real estate and personal property therein.

10. The defendant, City of Indianapolis, et al., d/b/a Citizens Gas & Coke Utility, was notified, through Mr. Woodrow Shotts, the dispatcher, of the emergency break in the gas service line at 6:40 p.m., on September 12, 1962.

11. The break in the gas line was a 'high pressure leak' and was entitled to first priority in accordance with the records and procedures of the defendant gas company.

12. The time of arrival at plaintiffs' residence by the defendant, City of Indianapolis et al., d/b/a Citizens Gas & Coke Utility, was 7:30 p.m. on September 12, 1962.

13. The gas explosion resulted in damages to plaintiffs as stipulated at trial in open court, in the amount of Thirty-Four Thousand Five Hundred Fifty-six Dollars and Forty-one Cents ($34,556.41), exclusive of interest.

\* \* \*

15. The defendants, Howard H. Albaugh and Charles W. McClellan, Jr., were negligent as follows:

(a) They carelessly and negligently attempted to connect a gas distribution line from the gas furnace to the meter, and in the course of such attempted installation applied a downward pressure on said meter, which downward pressure together with the unsupported weight of the meter, gas piping and gas lines caused the gas line to break between said meter and the basement wall of plaintiffs' house.

(b) They carelessly and negligently failed to seal the broken gas line, thereby permitting said house to become filled with gas, which resulted in the above described explosion.

(c) They carelessly and negligently failed to open windows and doors in said house to permit the escape of gas after said gas line was broken.

(d) They carelessly and negligently permitted gas to escape from the gas plumbing and appliances in said house, causing said house to fill with gas, which resulted in the explosion.

(e) They were negligent in failing to shut off the electric current prior to commencing the installation of the gas

conversion unit at the plaintiffs' residence. They were further negligent in failing to shut off the gas at the street curb shut-off valve prior to commencing the installation in plaintiffs' basement.

(f) They were further negligent in failing to ask the dispatcher at the Citizens Gas & Coke Utility the location of the curb street shut-off valve in order that they might shut it off prior to the explosion and the destruction of plaintiffs' property.

16. The defendant, City of Indianapolis, et al., d/b/a Citizens Gas & Coke Utility, was negligent as follows:

(a) It carelessly and negligently failed to turn off said gas after it had actual notice of the leaking of said gas in the plaintiffs' house when it knew or in the exercise of reasonable care should have known that such failure was likely to cause damage to the property of others and more particularly to the property of the plaintiffs.

(b) It was further negligent in failing to advise the defendants Albaugh and McClellan of the location of the curb shut-off valve and also was negligent in failing to advise the defendants Albaugh and McClellan to shut off the electricity of the home in order to prevent an electrical device from igniting an explosive mixture of the gas in plaintiffs' home.

(c) It was further negligent in failing to have a sufficient number of emergency vehicles available to handle priority emergency leak orders.

17. The negligence of all defendants, except Hall-Neal Furnace Company, proximately caused the damages which plaintiffs have sought and are entitled to recover.

\* \* \*

CONCLUSIONS OF LAW

1. The Court now finds that the law is with the plaintiff and with the defendant Hall Neal Furnace Company.

2. The Court now finds that the facts as found specially herein constitute negligence on the part of defendants Howard H. Albaugh and Charles W. McClellan, Jr., and the defendant City of Indianapolis, d/b/a Citizens Gas & Coke Utility, which concurred to become the proximate cause of the damage sustained by plaintiff herein."

A brief review of the evidence contained in the over 2300 page record, and viewed most favorably to the Falveys, shows

that about a month prior to the explosion Citizens Gas moved the gas meter in the Falvey home to a point where it could be read through a basement window. The Falveys then contacted Albaugh about converting the furnace to gas, and he subsequently agreed to do the work. Some preliminary work was done by Albaugh on the evening prior to the explosion. The next day Albaugh and McClellan arrived at the Falvey home between 5:15 and 5:30 p.m. They subsequently disconnected the meter and it sagged from twelve to eighteen inches from its previous position, hanging by the gas pipes. They left the meter in this position while they went to a hardware store to obtain some needed parts. Upon their return Albaugh climbed into a laundry tub and lifted the meter into place to reconnect it. At this point in time the gas line ruptured between the high pressure side of the regulator and the place where the line came through the basement wall, the break being closer to the latter. Albaugh testified that he had heard of older gas pipes breaking like that before, but it had never happened to him.

Albaugh tried to stop the leak with a wiping cloth, but was unsuccessful. McClellan went outside of the house to begin looking for the curb box which contained a cut-off valve. An attempt to enter the basement shortly thereafter was futile because of gas fumes and blowing dust and dirt. Albaugh then attempted to call Citizens Gas. His first four or five trys to reach them resulted in getting a recording which informed him that all of the gas company's telephone lines were busy. The evidence was that 21 telephone lines were available for such calls. When Albaugh finally got his call through, some ten minutes after the pipe broke, Albaugh told the gas company representative of a "bad gas leak" and that they could not find the curb box. The leak was making enough noise to be heard over the telephone by the gas company representative. A neighbor also testified she could hear the escaping gas from the Falvey's front yard. Albaugh and

McClellan opened the windows and doors upstairs but not in the basement. They also continued searching for the curb box.

When help did not arrive McClellan telephoned the gas company again with a renewed plea for assistance and prophetically adding that if they didn't arrive shortly there was no need to come for the house would not be there. Albaugh made yet another telephone call to the gas company.

The gas exploded leveling the house. The Fire Department arrived several minutes later with the service man arriving at about 7:30 p.m., having been dispatched at about 7 p.m., when he called in on his two-way radio.

The organizational structure of Citizens Gas, insofar as handling the incoming calls on the evening in question, was to refer complaints to one of two departments. If the call concerned a leak inside a home it was referred to the utilization department, and if outside the home to the street distribution department. The utilization department had twelve men on the "B" shift, six of whom were carry-overs from the "A" shift. Each was equipped with a truck and two-way radio.

The incoming calls were handled by four or five dispatchers. A leak order was then classified, given to the shift supervisor who would, in turn, "get somebody on it." They also had access to maps showing curb-box locations.

The court heard evidence from which it could infer that the utilization men were appliance service men and not emergency personnel, and that the gas company had no special provisions or procedures to handle emergency calls. However, there was testimony that personnel could be reached in an emergency.

There was also evidence that the street department had the capability of shutting off the gas at a main which serviced Falvey and about fourteen other homes but were not called upon to do so.

Prior to directing our attention to the various questions raised by the defendant-appellants, it must be remembered

that we only examine the evidence to determine if there was a sufficiency of evidence to support the trial court's decision. *Phar-Crest Land Corp.* v. *Therber* (1969), 251 Ind. 674, 244 N.E.2d 644. If any one or more of the findings material to the judgment is sustained by sufficient evidence or legitimate inference therefrom we will affirm the judgment. *Neel* v. *The Cass Co. Fair Assoc.* (1968), 143 Ind. App. 339, 240 N.E.2d 546. We will reverse only when the evidence and reasonable inferences therefrom are undisputed and could only lead to a decision contrary to the one arrived at by the trier of fact. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669.

Citizens Gas' overruled motion to correct errors specifies numerous particulars in alleging that the judgment is contrary to the evidence and the law with the most urgent argument being directed to Finding No. 16, which sets forth the particulars constituting negligent conduct on the part of Citizens Gas, and Conclusion of Law No. 2, which held them negligent as a matter of law. Just as Citizens Gas has argued the alleged errors of law and evidence collectively, we shall discuss and decide them in the same manner.

Citizens Gas is correct in asserting that the standard of ordinary care applies to gas companies in Indiana. As was held in *City of Indianapolis* v. *Walker* (1960), 132 Ind. App. 283, 168 N.E.2d 228, citing *Southern Indiana Gas Co.* v. *Tyner* (1912), 49 Ind. App. 475, 97 N.E. 580:

> "A review of our Indiana cases relative to degree of care seems to indicate that in Indiana we have adopted the rule of ordinary care. Thus, we are confronted with determining in the instant case whether or not there was any evidence before the jury from which it could infer that the appellant gas company failed to exercise that degree of care and caution that an ordinarily careful and prudent person similarly surrounded and situated would have exercised." 168 N.E.2d at 233.

Citizens Gas maintains that the trial court has made it an insurer. We assume that term, as used by Citizens Gas, to

be one who is liable even when exercising reasonable care. We cannot ascribe such a contention to this case. We are of the opinion that the following, in general terms, correctly states the applicable rule:

> "Where a gas company has notice of a break or defect in its pipes or service lines, it must use due care and diligence to prevent the escape of gas, either by cutting off the flow or by repairing the break.[5] If the company has notice of a leak or is cognizant of facts which should indicate to it the possibility of accident, it may be held liable even though the precise manner in which the harm resulted could not have been foreseen.[6] (Footnotes omitted). 26 Am. Jur. 2d, *Electricity, Gas and Steam* § 226.

Moreover, the necessary precautions must be taken within a reasonable time or as quickly as practically possible after notice. 26 Am. Jur. 2d, *Electricity, Gas and Steam* § 229.

A New Jersey case dealing with similar contentions in an analogous situation held:

> "Defendant contends that there was no proof upon which an inference could be based that had the gas been turned off at the curb at an earlier time, the accumulation of gas would not have exploded. We disagree. Of course, the plaintiffs have the burden of proving causation but they are not obliged to establish it by direct, indisputable evidence. 'The matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation.' The utility is under a duty to respond within a reasonable time upon notification of an emergency break in service. This duty is created in law because of the belief that measures it could take, such as turning off the gas at the curb, would prevent or diminish the risk of loss from an explosion. Conversely, if this duty is breached, it can be inferred that the failure to respond in a reasonable time would probably increase the risk of explosion which otherwise would exist.
>
> In the present case the proofs show that all of the windows in the house were opened immediately after the pipe was dislodged. The jury from common knowledge could find that the gas would dissipate if it were turned off, and that in the normal course of events, the risk of explosion would diminish and eventually disappear. The jury could also find that the flow of gas which continued after it should have been turned

off increased the concentration of the gas and accordingly the risk of explosion. Since, in fact, the explosion did not occur for 20 minutes, the jury could find had the gas been turned off sooner, the explosive concentration would not have been reached or would have been dissipated before the detonating spark occurred, and hence the explosion more probably than not would have been prevented. Therefore, we cannot say as a matter of law that the defendant's delay was not a substantial factor contributing to the cause of the explosion. . . ." (Authorities omitted.) *Kulas* v. *Public Service Elec. and Gas Co.* (N. J. 1964), 196 A. 2d 769, at 773, 774.

(We are of the opinion that the foregoing is also partially dispositive of Citizens Gas' argument that there was no showing that the situation would have been helped by an earlier arrival at the Falveys.)

What constitutes a reasonable time depends upon the circumstances.

"The dispatch with which a gas company must repair a leak in its own gas pipe to avoid liability is measured by the apparent degree of danger. If the company is on notice that such a pipe is leaking to a dangerous extent the haste with which it should proceed to remedy the situation would of course be greater than in the case where such was not a part of the notice and nothing in the information received would justify the company in concluding that the leak might be immediately dangerous. In the lines of such company's consumers the duty could only extend to the responsibility to shut off the gas until repairs were made, the responsibility to demonstrate the existence of the duty being cast upon a complainant. Before the duty to shut off the gas would exist the company should have actual notice or knowledge of sufficient facts from which notice could be reasonably inferred. After such is established the company would have a reasonable length of time within which to correct the defective condition." *Lone Star Gas Company* v. *Striplin* (Tex. Civ. App. 1960), 342 S. W. 2d 359 at 362. See also: *Milwaukee Insurance Co.* v. *Gas Service Co.* (1959), 185 Kan. 604, 347 P. 2d 394.

We are of the opinion that the reasoning and holdings of *Kulas* and *Lone Star, supra,* are legally compatible with Indiana authorities cited by Citizens Gas for the proposition

of ordinary care. See: *Walker* and *Tyner, supra,* and *City of Indianapolis* v. *Bates* (1965), 137 Ind. App. 227, 205 N.E. 2d 839.

Citizens Gas submitted evidence as to their leak response procedures which included the method and manner of determining how many personnel were to be available at any given time to respond to calls as they were received. The trial court's Finding No. 16 (c) stated that the number was negligently insufficient. Previously reiterated testimony bears the finding out when viewed in conjunction with the emergency nature of the leak at the Falveys' home.

Citizens Gas also alleges the trial court erred in not finding that the Falveys contributory negligence barred recovery. A portion of this argument is based upon an agency theory between the gas plumbers and the homeowner with their negligence being imputed to the Falveys. We are of the opinion that the record does not substantiate a master-servant relationship between these two parties. The other portion of the argument is directed to conflicting testimony as to whether the top of the curb-box, which contained a cut-off valve, had been covered with dirt and could not be readily discovered by visual means. The trial court chose to believe the evidence that such was not the case and he was within his province to do so.

> "It is for the trier of the facts . . . to reconcile, to reject, or accept part of disputed or conflicting testimony, even when made by the same witness and that witness is a party to the action." (Authorities omitted). *Bates, supra,* 205 N.E.2d at 845.

From this same evidence, when applied to Citizens Gas' earlier argument concerning what could have been done if they arrived earlier, the court could have inferred the gas could have been shut off in time to avert the explosive build-up.

Citizens Gas also takes exception to that portion of Finding No. 16 which based negligence on the failure to advise the gas plumbers of the curb-box location and to advise them to shut

off electric service to the Falvey home. The court heard testimony from a gas company representative that the gas plumbers would not have the necessary "street key" to turn off the gas (Albaugh had one) and that he knew the gas flow would have to be terminated at the curb-box.

> ". . . The question of negligence in such a case depends on whether the gas company exercised that degree of care and caution that an ordinarily careful and prudent person similarly surrounded and situated would have exercised, and such question is ordinarily one of fact. . . ." *Tyner, supra,* 49 Ind. App. at 490.

We cannot conclude that the trial court erred in regard to the duty to advise the plumbers in view of the urgent and dangerous situation which Citizens Gas knew existed.

Albaugh and McClellan argue that the failure of Citizens Gas to shut off the gas within a reasonable time acts as an intervening cause thereby negating the trial court's conclusion that concurring negligence existed on the part of Citizens Gas and the gas plumbers. In dealing with concurrent negligence it has been held that:

> "It is well settled that where the plaintiff was injured, without his fault, by the concurrent negligence of the defendant and a third person, not subject to the plaintiff's control or direction, the defendant can not avail himself of the negligence of such third person as a defense." *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299, 305, 64 N.E. 638, 640.

Accord: *City* v. *Walker, supra:*

> "In order to be actionable, an act of negligence need not be the only proximate cause. It is sufficient if the act, concurring with one or more efficient causes other than the plaintiff's fault, is proximate cause of the injury.

> \* \* \*

> Ordinarily, the issue of proximate cause is for the jury if different minds might reasonably draw different inferences from the facts given. Certainly it is for the jury to determine whether or not the injurious consequences that resulted from negligence are such as ought reasonably to

have been foreseen, or whether an intervening cause was such as to break the causal connection. 21 I.L.E. § 204 *Negligence*, 428 at 430." *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, 852.

In the instant case the judge served as a trier of fact and, therefore, made the determination as to the existence, or lack thereof, of an intervening cause.

The question of whether or not an intervening act is present does not change the test of reasonable foreseeability in determining proximate cause. *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N.E.2d 242, *Stauffer* v. *Ely* (1971), 149 Ind. App. 93, 270 N.E.2d 889.

The facts of the case lend themselves to the trial court finding that the causing of the pipe to break and the subsequent escape of gas with a failure to stop the flow acted as concurrent acts of negligence resulting in joint liability. Both parties could, or should, have foreseen the possibility of an explosion under the circumstances.

Albaugh and McClellan's motion to correct errors is also directed at the failure of Finding No. 15 to accurately reflect the testimony during the trial. Examples of these discrepancies are in the findings that they failed to open windows, with the record showing that they opened windows and doors about the house, except in the basement; both gas plumbers testified in substance that the break occurred when the meter was pushed up and not down; and that negligence could not be based upon a failure to shut off gas and electricity prior to beginning the work because custom and practice did not call for cutting off the gas at the curb on this type of job, and that electricity was required for light and the operation of power tools.

Concomitant with the foregoing, the argument is made that the conduct of the gas plumbers did in fact constitute reasonable care.

We agree with Albaugh and McClellan that some of the findings of negligence do not reflect some of the evidence with

complete accuracy; however, the trial court's Finding No. 15(A) is sufficient to cause liability to attach to them.

Both Citizens Gas and the gas plumbers argue vigorously that the evidence was that the break in the gas line occurred when Albaugh lifted the sagging meter for the purpose of reconnecting it to the gas lines. We are of the opinion that this does not take into account the testimony, albeit conflicting, that the meter was left hanging in a position of a foot to a foot and one-half lower for a period of time, thereby exerting the downward pressure referred to by the trial court.

The remaining argument raised by the gas plumbers raises the question of the duty owed by them to the Falveys. It is obvious that the trial court correctly found that the duty was not to break the gas pipe.

Having found no reversible error the judgment of the trial court is affirmed.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 296 N.E.2d 896.